2004-NMSC-018

91 P.3d 58

**Levinia OCANA, Plaintiff–Appellant,**

v.

**AMERICAN FURNITURE COMPANY
and Thomas Kaminski, Defendants–
Appellees.**

No. 26,955.

Supreme Court of New Mexico.

May 17, 2004.

Rehearing Denied May 20, 2004.

542

David Henderson, Catherine Downing, Downing & Henderson, P.C., Santa Fe, NM, for Plaintiff.

Patrick D. Allen, Yenson, Lynn, Allen & Wosick, P.C., Santa Fe, NM, for Defendant American Furniture.

Michael Danoff, Santa Fe, NM, for Defendant Thomas Kaminski.

**544**

## OPINION

MAES, Chief Justice.

{1} On Plaintiff's motion for rehearing, the opinion previously filed in this matter on April 8, 2004, is hereby withdrawn and the following substituted in its place. The motion for rehearing is otherwise denied.

{2} Plaintiff-Appellant Levinia Ocana appeals the district court's granting of summary judgment in favor of Defendants-Appellees American Home Furnishings (American) and Thomas Kaminski on all counts of her complaint. We have jurisdiction by virtue of NMSA 1978, § 28-1-13(C) (1987) (providing for direct appeal to the Supreme Court under the Human Rights Act). We affirm in part, reverse in part, and remand for further proceedings.

## FACTS

{3} Levinia Ocana was employed at American's Santa Fe store from July 1997 through November 1998. On December ·10, 1998, Ocana filed an employment discrimination complaint with the New Mexico Department of Labor Human Rights Division against American, in which she charged American with unlawful sexual discrimination and retaliation. The Division forwarded a copy of her complaint to the Equal Employment Opportunity Commission ("EEOC") for investigation of federal employment violations. While her complaint was being investigated by the agencies, she hired an attorney who was experienced in litigating employment discrimination claims to represent her. Her attorney was familiar with the administrative procedures of both agencies. Her attorney filed an entry of appearance with the Division, but he did not file an entry of appearance with, the EEOC. Normally, the Division places a complainant's attorney on its mail distribution list once the attorney files an entry of appearance with the Division. Apparently, it is from this list that the EEOC learns of an attorney's appearance in a case. Her attorney assumed that the EEOC would learn of his appearance in the case through this process. The Division wrote to her attorney shortly after his entry of appearance was filed. In the letter the Division admitted receiving his entry of appearance and includ-

ed American's answer to Ocana's complaint. Her attorney subsequently filed a response to American's answer with the Division.

{4} On July 27, 1999, the Division issued a no-probable-cause letter to Ocana. In the letter the Division informed Ocana that it was dismissing her complaint because it had found insufficient evidence to support her employment discrimination charges. The Division further informed her that she had 30 days to appeal the decision to state district court. The Division sent her letter via certified mail to the address that she had listed on her complaint. She did not receive this letter, however, because she had moved during this time and had left no forwarding address with postal authorities. In addition, neither she nor her attorney had informed either agency of her change in address. Instead, she assumed that all correspondence would be sent to her attorney. However, because the Division had neglected to place her attorney on its mail distribution list, no letter was sent to him.

{5} On August 16, 1999, the EEOC issued a right-to-sue letter to Ocana. The EEOC informed her in the letter that it was adopting the Division's findings and was dismissing her complaint. The EEOC mailed the letter to her at the address listed on her complaint. The letter was returned to the EEOC on September 9, 1999, with the notation, "moved, left no address." Copies of the letter were apparently mailed to the individuals that were listed on the Division's mail distribution list. However, no letter was sent to her attorney because he was not put on the Division's mail distribution list.

{6} On the one-year anniversary of the complaint's filing with the Division, her attorney contacted the Division to check on the complaint's status. Apparently, his decision to contact the Division at this time was based on his knowledge of the New Mexico Human Rights Act ("NMHRA"), NMSA 1978, §§ 28-1-1 to -15 (1969, as amended through 1993, prior to 1995, 2000, & 2001 amendments), and its requirement that the Division must act on a complaint within a year of its filing. *See* § 28-1-10(G) (1995, repealed effective July 1, 2006) (requiring the Division to dismiss complaint for lack of probable cause,

achieve satisfactory adjustment of the complaint, or file a formal complaint on behalf of the commission within a year of a complaint's filing). Her attorney learned of the no-probable-cause letter, a copy of which was faxed to him later that day. According to her attorney, the Division agreed at this time that the time for filing Ocana's appeal to state district court "would begin to run on December 10, 1999." Her attorney then contacted the EEOC and learned of the right-to-sue letter. The EEOC mailed him a copy of the right-to-sue letter, which he received on January 4, 2000. His representation of Ocana ended a short time later.

{7} On January 10, 2000, Ocana, acting pro se, filed an eight-count complaint in state district court against American and Kaminski, the general manager of the store where she had worked. She charged American with hostile work environment, sexual harassment and retaliation in violation of both the NMHRA and Title VII, 42 U.S.C. §§ 2000e et seq. (1994). She also charged American with negligent supervision and retention. She charged Kaminski with sexual assault, battery, and intentional infliction of emotional distress ("IIED"). She filed the same charges against American under a vicarious liability theory.

{8} Several months later, American moved for summary judgment on all counts, while Kaminski moved for summary judgment on some of the counts. In its motion, American asserted that Ocana's sexual harassment and retaliation claims under the NMHRA and Title VII were time barred. American also asserted that it could not be vicariously liable on her sexual harassment claims because it "had a policy in place prohibiting sexual harassment, Ms. Ocana never complained to a manager at American regarding Mr. Kaminski's supposed harassment, and even if Mr. Kaminski harassed Ms. Ocana ... [he] could not have been acting in the scope of his employment." On the retaliation claims, American asserted that Ocana had also failed to present a prima facie case and that it had shown a legitimate business reason for her termination. On the negligent supervision and retention claim, American asserted that Ocana had failed to present a prima facie

case. On the common-law claims, American asserted that Ocana had failed to present a prima facie case and that it could not be vicariously liable for Kaminski's alleged acts as a matter of law.

{9} Kaminski, on the other hand, moved for summary judgment only on the sexual harassment and retaliation claims. Like American, he stated that these claims were time barred. On the retaliation claims, he further stated that Ocana had also failed to present a prima facie case and that American had shown a legitimate business reason for her termination. He did not move for summary judgment on the common-law claims, admitting that there was a "factual dispute between the parties" on these claims.

{10} Ocana filed a response to American's and Kaminski's summary judgment motions, where she asserted that summary judgment should not be granted because there were triable issues of material fact on all counts. In the meantime, she filed a separate motion to compel discovery from American. The district court, granting the motion in part, ordered American to disclose any sexual harassment lawsuits filed against Kaminski during his employment with American; to disclose all formal sexual harassment complaints against other employees of American's Santa Fe store for the one year period before April 1998 and the one year period after November 1999; to produce the sales rankings of all salespersons working in Ocana's department during her employment; and to produce the employment file for two particular employees. Before discovery could be completed, however, the district court granted summary judgment to American and Kaminski on all counts. The district court listed several reasons for its decision: there was no evidence corroborating Ocana's claims of sexual harassment; there were no witnesses and no evidence that she complained about the harassment until after she was fired; she had been disciplined for as many as 14 major mistakes; she had testified in depositions that her supervisor (Robin Fischman) disliked her and had selected her for the reprimands; the witness whom she said she had complained to denied this fact in depositions; both the Division and the

EEOC found no evidence supporting her claims; her NMHRA and Title VII claims were untimely filed and the time limits were not tolled; and in her response to the summary judgment motion, she said Kaminski had written her up 14 times, but this was not true because there was only one complaint that bore his signature and it was a counter-signature to Fischman's signature.

{11} On appeal, Ocana argues that summary judgment in favor of American and Kaminski on all counts was improper because:(1) there was a genuine issue of fact as to whether the time limitations for filing her sexual harassment and retaliation claims under the NMHRA and Title VII were tolled; (2) there was evidence supporting her sexual harassment claims and American's vicarious liability on these claims; (3) Kaminski admitted that there was a factual dispute to the common-law claims; (4) there was evidence supporting American's vicarious liability on the common-law claims; (5) a prima facie case of retaliation had been made; and (6) discovery had not been completed on her negligent supervision and retention claim.

# DISCUSSION

## I. Tolling

{12} The district court granted summary judgment in favor of American and Kaminski on Ocana's Title VII and NMHRA sexual harassment and retaliation claims on the grounds that the claims were time barred. Summary judgment is proper if there are no genuine issues of material fact and the moving party is entitled to summary judgment as a matter of law. *Roth v. Thompson*, 113 N.M. 331, 334, 825 P.2d 1241, 1244 (1992). There is no factual dispute that these claims were untimely filed, but Ocana argues, as she did in district court, that the time period for filing these claims was tolled. "In a motion for summary judgment, the party claiming that a statute of limitation should be tolled has the burden of alleging sufficient facts that if proven would toll the statute." *Stringer v. Dudoich*, 92 N.M. 98, 99, 583 P.2d 462, 463 (1978). To meet her burden, Ocana had "to show at least a reasonable doubt as to the existence of a genuine factual issue on tolling of the statute." *Hutcherson v. Dawn Trucking Co.*, 107 N.M.

358, 360, 758 P.2d 308, 310 (Ct.App.1988). The determination of whether a claim is timely filed is a question of fact, and only becomes a question of law when there is no factual dispute. *City of Roswell v. Chavez*, 108 N.M. 608, 611, 775 P.2d 1325, 1328 (Ct. App.1989). In our review, " 'we examine the whole record for any evidence that places a genuine issue of material fact in dispute.' " *Handmaker v. Henney*, 1999–NMSC–043, ¶ 18, 128 N.M. 328, 992 P.2d 879 (quoting *Rummel v. Lexington Ins. Co.*, 1997–NMSC–041, ¶ 15, 123 N.M. 752, 945 P.2d 970). "[W]e view the facts in a light most favorable to the party opposing [summary judgment] and draw all reasonable inferences in support of a trial on the merits." *Id.* ¶ 18. Our review is de novo. *Coates v. Wal–Mart Stores, Inc.*, 1999–NMSC–013, ¶ 21, 127 N.M. 47, 976 P.2d 999.

### a. Title VII claims

{13} Ocana argues that there are two reasons why the 90–day period for filing her Title VII claim should be tolled. First, she argues that the 90–day period does not begin to run until the complainant actually receives notice of the right to sue from the EEOC. Second, she argues that the Division's mistake equitably tolled the 90–day period. She contends that had the Division placed her attorney on its mail distribution list, the EEOC would have known to send him her right-to-sue letter. She further contends that had the Division mailed its no-probable-cause letter to her attorney, he would have been able to check on the status of the right-to-sue letter because he would have known that it would be forthcoming as a matter of course. We discuss each of her tolling arguments in turn.

{14} The 90–day period for filing suit under Title VII normally begins to run on the date the complainant receives actual notice of the right to sue. *See* 42 U.S.C. § 2000e–5(f)(1); *see also Williams v. S. Union Gas Co.*, 529 F.2d 483, 487 (10th Cir. 1976). Known as the "actual notice" rule, this rule is meant to protect a Title VII complainant from losing "the right to sue because of fortuitous circumstances or events beyond his or her control which delay receipt

of the EEOC's notice." *St. Louis v. Alverno Coll.*, 744 F.2d 1314, 1316 (7th Cir.1984). Thus, a complainant who is at fault for not receiving notice of the right to sue may not rely on the actual notice rule. *See Wagher v. Guy's Foods, Inc.*, 765 F.Supp. 667, 669 (D.Kan.1991). The actual notice rule does not apply where the complainant fails to report a change of address to the EEOC. *St. Louis*, 744 F.2d at 1316–17; *accord* 29 C.F.R. § 1601.7(b) (1991) ("The person claiming to be aggrieved has the responsibility to provide the Commission with notice of any change in address...."). Therefore, since neither Ocana nor her attorney notified the EEOC of her change in address, the actual notice rule does not apply to the facts of her case.

{15} We now turn to Ocana's equitable tolling argument. Since Ocana's Title VII claim involves a federal statute, federal law governs the resolution of this issue. *See Brown v. Hartshorne Pub. Sch. Dist. No. 1*, 926 F.2d 959, 961 (10th Cir.1991) ("When Congress has provided a federal statute of limitation for a federal claim, however, state tolling and saving provisions are not applicable."); *Chico–Velez v. Roche Prods., Inc.*, 139 F.3d 56, 59 n. 3 (1st Cir. 1998) ("Given that the relevant limitation period originates in a federal statute, the issue of equitable tolling is governed by federal law."). The 90–day period for filing a Title VII lawsuit is subject to equitable tolling. *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982). Equitable tolling is a nonstatutory tolling theory which suspends a limitations period. *See Gathman–Matotan Architects and Planners, Inc. v. State Dep't of Fin. & Admin.*, 109 N.M. 492, 494, 787 P.2d 411, 413 (1990). Equitable tolling typically applies in cases where a litigant was prevented from filing suit because of an extraordinary event beyond his or her control. *Martinez v. Orr*, 738 F.2d 1107, 1110 (10th Cir.1984). However, where a plaintiff fails to receive notice of the right to sue through his or her own fault, equitable tolling does not apply. *See Baldwin County Welcome Ctr. v. Brown*, 466 U.S. 147, 151, 104 S.Ct. 1723, 80 L.Ed.2d 196 (1984) ("One who fails to act diligently cannot invoke equitable principles to excuse that

lack of diligence."). In *Hunter v. Stephenson Roofing Inc.*, 790 F.2d 472, 475 (6th Cir. 1986), the Sixth Circuit Court of Appeals held that equitable tolling is not available to a Title VII plaintiff who fails to notify the EEOC of a change in address, and does not receive notice of the right to sue as a result. Relying on precedent and federal law, the court said that a plaintiff's burden of notifying the EEOC of a change in address is both minimal and reasonable.

{16} Ocana argues that *Hunter* does not apply because it does not address "the failure of an administrative agency to send notice of decision to an attorney of record." Ocana's argument is similar to the argument that was advanced in *Banks v. Rockwell Int'l N. Am. Aircraft Operations*, 855 F.2d 324 (6th Cir. 1988). In *Banks*, the EEOC mailed notice of the right to sue to Banks, but did not mail notice of the right to sue to his attorney of record. *Id.* at 325–26. Banks moved while his complaint was being investigated. *Id.* at 325. He did not leave a forwarding address and he did not notify the EEOC of his change in address. *Id.* Consequently, his right-to-sue notice was returned to the EEOC unclaimed. *Id.* Banks argued on appeal that the 90–day period should be tolled because, even if he had failed to give his new address to the EEOC, the EEOC's failure to send notice of the right to sue to his attorney "contributed to the expiration of the ninety-day period." *Id.* at 326. The court rejected this argument and said that Title VII complainants have an affirmative duty to notify the EEOC of a change in address. *Id.* at 326–27. The court also said that since equitable tolling is based in equity, the individual claiming equitable tolling must have clean hands. *Id.* at 327. The court said that since Banks had failed to comply with the change of address requirement, he was not entitled to have the 90–day period equitably tolled. *Id.*

{17} Similarly, in *Hill v. John Chezik Imps.*, 869 F.2d 1122 (8th Cir.1989), the Eighth Circuit Court of Appeals refused to apply equitable tolling where Hill, a represented complainant, failed to receive notice of the right to sue due in part to her failure to notify the EEOC of her change in address.

The EEOC told Hill during its investigation that it would send its correspondence to her and her attorney. *Id.* at 1123. Hill moved during the investigation, but she did not notify the EEOC of her new address. *Id.* The EEOC subsequently mailed a right-to-sue letter to Hill's old address. *Id.* However, the EEOC did not notify her attorney of Hill's right to sue. *Id.* As a result, Hill did not receive the letter. *Id.* In its decision, the court noted that equitable tolling has generally been reserved for "circumstances which were truly beyond the control of the plaintiff." *Id.* at 1124. The court held that Hill's Title VII claims were not subject to equitable tolling because "Hill could easily have informed the EEOC of her new address." *Id.* Furthermore, the court also noted that "[t]he fact that Hill relied on the EEOC to send copies of correspondence to her attorney [did] not distinguish her case." *Id.*

■■■ {18} We find *Banks* and *Hill* persuasive. As *Banks* and *Hill* demonstrate, Ocana has an affirmative duty to notify the EEOC of her change in address even if she has counsel. *See Wagher,* 765 F.Supp. at 670 (noting that the fact that the complainant has taken "the steps necessary to insure the right-to-sue letter is sent to [his or] her legal counsel, [whom he or] she has charged with the responsibility of acting upon this letter ... does not take away from the complainant's duty to report a change in address but only provides an alternative way for the complainant to protect [his or] her interest in the potential lawsuit"). Even if the Division contributed to Ocana's non-receipt of the right-to-sue notice, she was also at fault for not giving the EEOC her new address. Thus, the doctrine of equitable tolling does not apply to her Title VII claim. *See id.* Therefore, since Ocana did not establish the existence of a genuine factual issue on the tolling of her Title VII claim, the district court's granting of summary judgment on this claim was proper.

### b. NMHRA claims

■■■ {19} Ocana argues that the district court's granting of summary judgment on her NMHRA claim was erroneous because the 30-day period for filing her appeal to state district court under the statute should have been tolled for reasons similar to her Title VII tolling arguments. She argues that the 30-day period was tolled as a result of the Division's failure to notify her attorney of its decision, and that the 30-day period did not begin to run until she actually received the no-probable-cause letter from the Division. Because we conclude that Ocana established the existence of a material fact as to whether the Division's failure to notify her attorney of record tolled the 30-day filing period, we do not discuss whether the 30-day period begins to run on the date the complainant actually receives notice of the no-probable-cause decision from the Division.

{20} An individual aggrieved by an order of the Human Rights Commission may file an appeal in the form of a complaint to state district court within 30 days from the date of service of the Commission's order. *See* Section 28–1–13(A) (1987); *accord* Rule 1–076(B) & (D) NMRA 2003. The Commission issued its decision in this case in July 1999. The Division, however, did not notify Ocana's attorney of record of the decision because, as a Division supervisor admitted in an affidavit, he was "erroneously not put on [the mail] distribution list." As the Division supervisor implied in her statement, the Division normally corresponds with a complainant through his or her attorney once the attorney files an entry of appearance on the complainant's behalf. The Division did not do this in this case. As a result, Ocana did not receive notice of the Division's decision until much later. Under these facts, a fact-finder could find that the Division's actions tolled the time limits. Since Ocana presented sufficient evidence showing at least a reasonable doubt as to the existence of a genuine factual issue on the tolling of the statute, summary judgment should not have been granted on this claim. Therefore, summary judgment on Ocana's NMHRA claim on the basis that it was time barred was improper.

## II. Sexual Harassment

{21} American asserts that summary judgment was proper based on the district court's conclusion that Ocana's testimony was "unsupported and unbelievable," although it

notes that it did not raise this point in its summary judgment motion. American's argument is based on the district court's determination that summary judgment was proper on the additional ground that Ocana's claims lacked "corroborating factual evidence." The district court stated in its written decision that there were no witnesses to the alleged harassment and no evidence that Ocana "asserted this problem to any one at the store until after her firing." The district court noted that the witness whom Ocana claimed to have told about the harassment denied it "under oath," and that state and federal authorities did not find any evidence to support her claims. The district court further noted that Ocana's response to the summary judgment motions showed "only her testimony of the events," and that she misstated the evidence in one instance.

{22} Ocana asserts that the district court's decision to grant summary judgment "rested on a weighing of evidence and assessments of credibility rather than an examination of the record to determine the existence of triable issues of fact." We agree. A court reviewing a summary judgment motion may not weigh the evidence or pass on the credibility of the witnesses. *Archuleta v. LaCuesta*, 1999–NMCA–113, ¶ 14, 128 N.M. 13, 988 P.2d 883. In its review, the court "must resolve all reasonable inferences in favor of the nonmovant and must view the pleadings, affidavits, depositions, answers to interrogatories and admissions in a light most favorable to a trial on the merits." *Garcia–Montoya v. State Treasurer's Office*, 2001–NMSC–003, ¶ 7, 130 N.M. 25, 16 P.3d 1084. Summary judgment is an extreme remedy that should be imposed with caution. *Kitchell v. Pub. Serv. Co.*, 1998–NMSC–051, ¶ 3, 126 N.M. 525, 972 P.2d 344. " 'If there is the slightest doubt as to the existence of material factual issues, summary judgment should be denied.' " *Garcia–Montoya*, 2001–NMSC–003, ¶ 7, 130 N.M. 25, 16 P.3d 1084 (quoting *Las Cruces Country Club, Inc. v. City of Las Cruces*, 81 N.M. 387, 387, 467 P.2d 403, 403 (1970)). Here, the district court improperly "assessed credibility and weighed evidence" in its summary judgment determination. The district court determined that the lack of corroborating evidence did not support Ocana's claim of sexual harassment, and thus did not support this claim going to the fact-finder. The district court noted that Ocana's evidence was uncorroborated, contradicted, and wrong in one instance. The district court also noted that her claims of sexual harassment were unsubstantiated by state and federal officials. Since it was improper for the district court to grant summary judgment based on its weighing of the evidence and assessment of credibility, we reject American's assertion that summary judgment was proper because Ocana's evidence was unsubstantiated and unbelievable. *See Steadman v. Turner*, 84 N.M. 738, 741, 507 P.2d 799, 802 (Ct.App.1973) (noting that courts may not weigh the evidence or assess credibility in summary judgment proceeding). We now address whether summary judgment was appropriate as to this claim.

{23} The NMHRA outlaws employer discrimination "in matters of compensation, terms, conditions or privileges of employment against any person otherwise qualified because of race, age, religion, color, national origin, ancestry, sex, physical or mental handicap or serious medical condition." Section 28–1–7(A). We have previously indicated that, when considering claims under the NMHRA, we may look at federal civil rights adjudication for guidance in interpreting the NMHRA. *Gonzales v. N.M. Dep't of Health*, 2000–NMSC–029, ¶ 20, 129 N.M. 586, 11 P.3d 550. "Our reliance on the methodology developed in the federal courts, however, should not be interpreted as an indication that we have adopted federal law as our own." *Smith v. FDC Corp.*, 109 N.M. 514, 517, 787 P.2d 433, 436 (1990). Sexual harassment is a form of discrimination that is prohibited by the NMHRA. *See Meritor Savs. Bank, FSB v. Vinson*, 477 U.S. 57, 65, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986); *see also Sabella v. Manor Care, Inc.*, 1996–NMSC–014, ¶ 17, 121 N.M. 596, 915 P.2d 901; *Cox v. Chino*, 115 N.M. 335, 338–39, 850 P.2d 1038, 1041–42 (Ct.App.1993). The United States Supreme Court has interpreted the phrase "compensation, terms, conditions or privileges" in Title VII as prohibiting all forms

of employment sexual discrimination, including quid pro quo and hostile work environment. *Meritor*, 477 U.S. at 64–65, 106 S.Ct. 2399. "Quid pro quo sexual harassment involves the conditioning of tangible employment benefits upon the submission to sexual conduct." *Hirschfeld v. New Mexico Corrs. Dep't*, 916 F.2d 572, 575 (10th Cir.1990). Hostile work environment occurs when the offensive conduct "has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive working environment." *Meritor*, 477 U.S. at 65, 106 S.Ct. 2399. We believe that the NMHRA, which "tracks the language of the federal Civil Rights Act," *see Smith*, 109 N.M. at 517, 787 P.2d at 436, also prohibits all forms of employment sexual harassment, including quid pro quo and hostile work environment.

■ {24} Since Ocana sued American under a hostile work environment theory, our determination of the appropriateness of summary judgment is limited to a discussion of this theory. Under Title VII, sexual harassment is actionable under a hostile work environment theory when the offensive conduct becomes so severe and pervasive that it alters the conditions of employment in such a manner that the workplace is transformed into a hostile and abusive environment for the employee. *Meritor*, 477 U.S. at 67, 106 S.Ct. 2399. In determining whether there was an abusive or hostile work environment, courts must look at the totality of the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993). The work environment must be both objectively and subjectively offensive—one that a reasonable person would find hostile or abusive and one that the employee did perceive as being hostile or abusive. *Id.* at 21–22, 114 S.Ct. 367.

{25} We conclude that Ocana presented a prima facie case of hostile work environment sexual harassment. She testified that Kaminski began to sexually harass her soon after he became general manager of the store where she worked. She described how he would always follow her around, including to the restroom. She said he would approach her when she was alone, stare at her, and touch himself in a sexually suggestive manner. He would also stand near her and stare at her breasts. He usually had an erection when she saw him and he rubbed up against her with an erection on one occasion. He would park next to her car even though he had a designated parking area. He would appear out of nowhere when she went into the warehouse. She said his behavior made her feel uncomfortable. She also said his presence affected her performance at work, and there was evidence that her work performance was poor. The question that we now must answer is whether American could be vicariously liable for Kaminski's actions.

■ {26} Under the NMHRA, American may be held liable for Kaminski's actions if he can be said to be the employer or "acting for" American. *See* Section 28–1–2(B). Ocana, however, does not assert that Kaminski was "acting for" American when he committed his alleged acts. Instead, Ocana asserts that American may be vicariously liable under the standard articulated in *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998). In *Ellerth* and *Faragher v. City of Boca Raton*, 524 U.S. 775, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998), the United States Supreme Court established a standard for determining employer liability in sexual harassment cases. Under this standard, "[a]n employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee." *Ellerth*, 524 U.S. at 765, 118 S.Ct. 2257; *Faragher*, 524 U.S. at 807, 118 S.Ct. 2275. The Court recognized, however, that holding employers automatically liable for a supervisor's sexual harassment of a subordinate employee would, in certain cases, contravene the policies of Title VII. *Ellerth*, 524 U.S. at 764, 118 S.Ct. 2257; *Faragher*, 524 U.S. at 805–06, 118 S.Ct. 2275. The Court determined that since Title VII is concerned with com-

bating workplace sexual harassment by preventing it from happening and promptly addressing it when it occurs, employers with anti-harassment policies and effective grievance procedures should be allowed to limit their liability or damages. *Ellerth,* 524 U.S. at 764, 118 S.Ct. 2257; *Faragher,* 524 U.S. at 806, 118 S.Ct. 2275. As a result, the Court established an affirmative defense for such employers. Subject to proof by a preponderance of the evidence, the defense consists of two essential elements: (1) the employer exercised reasonable care to prevent and correct promptly any sexual harassing behavior; and (2) that the employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise. *Ellerth,* 524 U.S. at 765, 118 S.Ct. 2257; *Faragher,* 524 U.S. at 807, 118 S.Ct. 2275. This defense, however, is not available to an employer when the employee has experienced a tangible employment action, "such as discharge, demotion, or undesirable reassignment." *Ellerth,* 524 U.S. at 761, 765, 118 S.Ct. 2257; *Faragher,* 524 U.S. at 808, 118 S.Ct. 2275. Thus, employer liability will be presumed where there is actionable sexual harassment and the harassing employee has supervisory authority over the victimized employee. Where no tangible employment action has been taken against the employee, the employer may rebut the presumption by proving both elements of the affirmative defense. We adopt this standard for determining employer liability under the NMHRA.

{27} As we previously determined, sufficient facts were presented demonstrating actionable sexual harassment. Additionally, American does not dispute that Kaminski had supervisory authority over Ocana. Therefore, since Ocana's sexual harassment claim is based on a hostile environment theory, American would be vicariously liable for Kaminski's actions unless it could establish its affirmative defense. Here, American asserts that it established its affirmative defense and was therefore entitled to summary judgment. We disagree. Ocana testified that she was never given a copy of American's policy on sexual harassment, that she never saw the policy, and that the topic was never discussed in any employee orientation

that she attended. This created a genuine issue of material fact that precluded summary judgment in favor of American on this ground. Consequently, we conclude that summary judgment on this claim was inappropriate.

## III. Common–Law Claims against Kaminski

{28} Ocana argues that summary judgment should not have been granted in favor of Kaminski on the assault, battery, and IIED claims. We agree. As we stated in *Akre v. Washburn,* 92 N.M. 487, 489, 590 P.2d 635, 637 (1979) (quoting *First Nat'l Bank in Albuquerque v. Nor–Am Agric. Prods., Inc.,* 88 N.M. 74, 80, 537 P.2d 682, 688 (Ct.App.1975)), "[s]ummary judgment can be granted only where the moving party is entitled to the judgment as a matter of law, upon clear and undisputed facts." In this case, Kaminski conceded that there was a "factual dispute" to the assault, battery, and IIED claims. Moreover, "[t]he movant must establish a prima facie case showing there is no genuine issue of material fact in order to be entitled to summary judgment." *State v. Integon Indem. Corp.,* 105 N.M. 611, 612, 735 P.2d 528, 529 (1987). Here, Kaminski did not move for summary judgment on these claims. Therefore, summary judgment was improper.

## IV. American's Vicarious Liability on the Common–Law Claims

{29} Ocana asserts that the district court should not have granted summary judgment in favor of American on this claim because there was evidence supporting American's vicarious liability for Kaminski's intentional torts of assault, battery, and IIED. Under basic respondeat superior principles, an employer is liable for an employee's torts committed within the scope of his or her employment. *Los Ranchitos v. Tierra Grande, Inc.,* 116 N.M. 222, 226, 861 P.2d 263, 267 (Ct.App.1993). Thus, under these principles, an employer is not generally liable for an employee's intentional torts because an employee who intentionally injures another individual is generally considered to be

acting outside the scope of his or her employment. *See Martin–Martinez v. 6001, Inc.,* 1998–NMCA–179, ¶ 13, 126 N.M. 319, 968 P.2d 1182 ("In most instances, the intentional conduct of an employee injuring another employee is not the intentional conduct of the employer."). Intentional torts arising from sexual harassment are generally considered to be outside the scope of employment. *Ellerth,* 524 U.S. at 757 118 S.Ct. 2257 ("The general rule is that sexual harassment by a supervisor is not conduct within the scope of employment."); *cf. Coates,* 1999–NMSC–013, ¶ 25, 127 N.M. 47, 976 P.2d 999 ("Injuries caused by sexual harassment do not arise out of employment."). Conceding that Kaminski's alleged torts were committed outside the scope of his employment, Ocana asserts that American may be vicariously liable under the aided-in-agency theory because there was evidence showing that the torts were facilitated by his supervisory status.

{30} Under the aided-in-agency theory, an employer may be held liable for the intentional torts of an employee acting outside the scope of his or her employment if the employee "was aided in accomplishing the tort by the existence of the agency relation." Restatement (Second) of Agency § 219(2)(d) (1958). As the parties acknowledge, no New Mexico court has yet adopted the aided-in-agency theory in addressing respondeat superior issues. Ocana asserts that we should adopt this theory because our courts have relied upon other sections of the Restatement in determining the scope of an employer's liability. She also asserts that it would be consistent with New Mexico's public policy favoring compensation to a victim injured by another's tortious actions. American, on the other hand, asserts that this theory should not be adopted because our courts have already developed a comprehensive and extensive "body of law which defines scope of employment." Consequently, American argues that these cases more aptly apply to the case at hand because they address "scope of employment" in the context of sexual harassment and assault. As a result of the parties' arguments, we discuss whether we should adopt the aided-in-agency theory in the context of sexual harassment.

{31} We do not believe that it would be a radical departure for this Court to adopt the aided-in-agency theory of vicarious liability. New Mexico courts have routinely relied upon the Restatement (Second) of Agency in discussing issues of respondeat superior. *See Nabors v. Harwood Homes, Inc.,* 77 N.M. 406, 407–08, 423 P.2d 602, 602–03 (1967) (applying the Restatement (Second) of Agency to determine if the employer was liable for the negligence of its employee). Additionally, adopting the aided-in-agency theory would further the policies that underlie tort law. *See Trujillo v. City of Albuquerque,* 110 N.M. 621, 624, 798 P.2d 571, 574 (1990) ("Our fault system of recovery, while by no means indispensable to our society in an abstract sense, today serves the important social functions of redistributing the economic burden of loss from the injured individuals on whom it originally fell, deterring conduct that society regards as unreasonable or immoral, and providing a vehicle by which injured victims may obtain some degree of compensation and satisfaction for wrongs committed against them and by which society may give voice and form to its condemnation of the wrongdoer." (Footnote omitted).), *rev'd on other grounds,* 1998–NMSC–031, 125 N.M. 721, 965 P.2d 305.

{32} Consequently, the question that we must decide is whether Ocana presented sufficient evidence showing that Kaminski was aided by his status as her supervisor in committing his alleged torts. We conclude that she did not. In order to prevail under the aided-in-agency theory, Ocana had to present sufficient evidence showing that Kaminski's supervisory authority aided him in the commission of his torts. Employees with such authority have been empowered by the employer to make decisions affecting subordinate employees. It is this authority, bestowed by the employer, that gives the supervising employee the ability to injure the subordinate employee. In this sense, the supervising employee is "aided-in-agency." *See* Restatement (Second) of Agency § 219(2)(d) cmt. e. (explaining that the basis for the aided-in-agency theory is that the employee "may be able to cause harm *be-*

*cause of his [or her] position as agent"* of the employer) (emphasis added). Here, Ocana failed to present any evidence showing that Kaminski's conduct occurred as a result of an abuse of his supervisory status. Since there is no evidence showing that Kaminski was able to commit his alleged acts by virtue of his supervisor status, summary judgment on this claim was proper.[1]

## V. Retaliation

{33} Ocana contends that the district court should not have granted summary judgment for American on this claim because she presented a prima facie case of retaliation. To prove a prima facie case of retaliation, Ocana needed to show that: (1) she engaged in protected activity; (2) she suffered an adverse employment action; and (3) there is a causal connection between these two events. *Gonzales,* 2000–NMSC–029, ¶ 22, 129 N.M. 586, 11 P.3d 550. Ocana asserts that she established a prima facie case of retaliation because she presented evidence showing that she opposed sexual harassment, she was terminated after she confronted Kaminski and reported the matter to Bradbury, and she was fired "because Kaminski directed her supervisors to get rid of her."

{34} We believe that Ocana failed to present a prima facie case of retaliation. Complaints that Ocana may have made to Bradbury about Kaminski would not have been sufficient to put American on notice of an illegal employment practice because the record shows that Bradbury did not have any managerial authority and was not part of American's management. In fact, Bradbury testified that she was not Ocana's manager. Thus, even if Ocana had complained to Bradbury, which Bradbury denied in a deposition, Ocana's complaints would not be imputed to American because Bradbury was not part of American's management.

{35} The NMHRA makes it unlawful for any person or employer to retaliate against "any person who has opposed any unlawful discriminatory practice." Section 28–1–7(I)(2); *Gonzales,* 2000–NMSC–029, ¶ 19, 129 N.M. 586, 11 P.3d 550. As we have previously stated, we may look at federal civil rights adjudication for guidance in interpreting the NMHRA. *Gonzales,* 2000–NMSC–029, ¶ 20, 129 N.M. 586, 11 P.3d 550. Courts analyzing Title VII's "opposition clause" have not reached a consensus as to the type of conduct that would qualify as "opposition" under the clause. Thus, opposition may take many forms. Those forms include formal complaints, "as well [as] informal protests of discriminatory employment practices, including making complaints to management, writing critical letters to customers, protesting against discrimination by industry or by society in general, and expressing support of co-workers who have filed formal charges." *See Sumner v. U.S. Postal Serv.,* 899 F.2d 203, 209 (2nd Cir. 1990). Regardless of how the complaint is made, "the employee's communications to the employer [must] sufficiently convey the employee's reasonable concerns that the employer has acted or is acting in an unlawful discriminatory manner." *Callahan v. Bancorpsouth Ins. Servs.,* 244 F.Supp.2d 678, 684 (2002). Thus, "[a]t the very least, if the statement does not mention a specific act of discrimination, the employer must be able to discern from the context of the statement that the employee opposes an allegedly unlawful employment practice." *Id.* at 683. Because Ocana failed to establish that American was on notice of her opposition to unlawful discrimination, summary judgment on this claim was proper.

## VI. Negligent Supervision and Retention

{36} Ocana argues that the district court erred when it granted summary

---

1. We note that *Ellerth* and *Faragher* relied, in part, on the aided-in-agency theory of the Restatement in crafting their holdings. Both cases, however, expressly did not adopt the approach wholesale, but instead modified it to fit within the Title VII context. *See Faragher,* 524 U.S. at 802, 118 S.Ct. 2275 n. 3; *Ellerth,* 524 U.S. at 755, 118 S.Ct. 2257 (calling the Restatement "a useful *beginning point* for a discussion of general agency principles" (emphasis added), but going on to modify the doctrine to effectuate the policy goals of Title VII). Because the Supreme Court modified, rather than adopted, the Restatement approach in *Ellerth* and *Faragher,* we see nothing inconsistent with the result reached in this section, which relies on the Restatement, and the result reached in Section II, which relies on *Ellerth* and *Faragher.*

**554**

judgment in favor of American on the negligent supervision and retention claim because American had not yet disclosed evidence material to this claim as ordered by the district court. Although a trial court should not grant summary judgment before discovery has been completed, especially when further factual resolution is necessary to determine the central legal issues, *see Sun Country Sav. Bank of N.M. v. McDowell,* 108 N.M. 528, 534, 775 P.2d 730, 736 (1989), it appears that all relevant information on this matter was disclosed. "The proper standard for determining whether an employer should be held liable for negligent supervision or retention of an employee [is] ... whether the employer knew or reasonably should have known that some harm might be caused by the acts or omissions of the employee who is entrusted with such position." *Los Ranchitos,* 116 N.M. at 228, 861 P.2d at 269. The only outstanding discovery that appears to be relevant to this issue is the filing of other sexual harassment claims against Kaminski while in American's employment. In response to this request, American stated that "no other claims have been made against Mr. Kaminski." Thus, the district court may have concluded that no additional discovery would have produced additional evidence on this claim. Accordingly, we conclude that summary judgment on this claim was proper.

**CONCLUSION**

{37} Summary judgment should not have been granted on Ocana's sexual harassment claim under the NMHRA or her common-law claims against Kaminski; however, summary judgment was proper as to all other claims. Accordingly, for the above stated reasons, the judgment of the district court is affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion.

{38} **IT IS SO ORDERED.**

WE CONCUR: PAMELA B. MINZNER, PATRICIO M. SERNA, RICHARD C. BOSSON, and EDWARD L. CHÁVEZ, Justices.