The slip opinion is the first version of an opinion released by the Chief Clerk of the Supreme Court. Once an opinion is selected for publication by the Court, it is assigned a vendor-neutral citation by the Chief Clerk for compliance with Rule 23-112 NMRA, authenticated and formally published. The slip opinion may contain deviations from the formal authenticated opinion.

**IN THE SUPREME COURT OF THE STATE OF NEW MEXICO**

Opinion Number:

Filing Date: January 23, 2025

**NO. S-1-SC-39961**

**MCKENZIE JOHNSON,**

      Plaintiff-Respondent,

v.

**BOARD OF EDUCATION FOR**
**ALBUQUERQUE PUBLIC SCHOOLS**
**and MARY JANE EASTIN,**

      Defendants-Petitioners.

**ORIGINAL PROCEEDING ON CERTIORARI**
**Benjamin Chavez, District Judge**

Walsh Gallegos Trevino Kyle & Robinson, P.C.
Roxie Rawls-De Santiago
Albuquerque, NM

for Petitioner Board of Education for the Albuquerque Public Schools

Robles, Rael and Anaya
Luis Robles
Albuquerque, NM

for Petitioner Mary Jane Eastin

Parnall & Adams Law
Charles S. Parnall
David M Adams
Albuquerque, NM

ACLU of New Mexico
Leon Howard
Maria Martinez Sánchez
Preston Sanchez
Albuquerque, NM

NM Center on Law and Poverty
Sovereign Hager
Verenice Peregrino Pompa
Albuquerque, NM

for Respondent

University of New Mexico School of Law
Barbara L. Creel, Professor of Law
Albuquerque, NM

for Amici Curiae Native American Budget and Policy Institute, Native American Disability Law Center, and University of New Mexico Law Professors

**OPINION**

**THOMSON, Chief Justice.**

{1}     Defendants Mary Jane Eastin and the Board of Education for Albuquerque Public Schools (APS) challenge the Court of Appeals' holding that the plain language of the New Mexico Human Rights Act, NMSA 1978, §§ 28-1-1 to -15 (1969, as amended through 2019) (NMHRA or the Act), defines a public school as a public accommodation, thereby subjecting public schools to suit for discriminatory conduct. *Johnson v. Bd. of Educ. for Albuquerque Pub. Schs.*, 2023-NMCA-069, ¶¶ 1-2, 535 P.3d 687; *see* § 28-1-2(H) (2007) (defining "public accommodation") and § 28-1-7(F) (2019) (making discriminatory conduct in a public accommodation unlawful).[1]

{2}     We affirm the Court of Appeals and hold that a public school is a public accommodation under the NMHRA and that the Court of Appeals did not err in refusing to apply *Human Rights Commission of New Mexico v. Board of Regents of University of New Mexico College of Nursing* (*Regents*), 1981-NMSC-026, 95 N.M. 576, 624 P.2d 518. We conclude that *Regents*' holding that a public university in its

---

[1]The original NMHRA definition of "public accommodation" was amended in 2023 and now includes "any governmental entity." *Compare* § 28-1-2(H) (2023), *with* 1969 N.M. Laws, ch. 196, § 2(F).

"manner and method of administering its academic program" is not a public accommodation was incorrect and that *Regents* is no longer good law. *Id.* ¶¶ 11.

## I.      BACKGROUND

**A.      Factual Background**

{3}      Defendant Eastin allegedly perpetrated discriminatory acts against both Mackenzie Johnson (Plaintiff), a sixteen-year-old Native American student at Cibola High School, and another Native American student in her class on Halloween in 2018. Plaintiff alleges that Eastin cut off a portion of another Native American student's braided hair and then referred to Plaintiff, whose Halloween costume included fake blood, as a "'bloody Indian.'" Plaintiff brought suit against Defendants, alleging violation of the NMHRA's prohibitions against discrimination in public accommodations. The district court dismissed the suit based on the finding that APS and its public secondary schools are not "public accommodations."

{4}      The Court of Appeals reversed the district court and held that "a secondary public school[] is a public accommodation" based on "the plain language of the NMHRA, the differing circumstances of this case," and this Court's language in *Regents* limiting its holding to the university at issue's "'manner and  method of administering its academic program.'" *Johnson*, 2023-NMCA-069, ¶¶ 1-2 (quoting *Regents*, 1981-NMSC-026, ¶ 16). We granted certiorari on two questions: (1) "Did

the Court of Appeals err when it determined that a public school in New Mexico can be classified as a public accommodation under the [NMHRA]" and (2) did the Court of Appeals err in its interpretation and application of *Regents*?

**B.      History of Discrimination in Public School Accommodations**

{5}      The NMHRA's protections against numerous forms of discrimination must be read against the backdrop of this state's unfortunate history of race-based discrimination, including that history transpiring within our public schools. The intent to prohibit discrimination in public schools has been apparent since the inception of statehood. Article XII, Section 1 of the New Mexico Constitution requires, "A uniform system . . . sufficient for the education of . . . all the children of school age in the state shall be established and maintained." To ensure that discrimination would not interfere with the enjoyment of this right, Article XII, Section 10 provides in part, "Children of Spanish descent in the state of New Mexico shall never be denied the right and privilege of admission and attendance in the public schools . . . but shall forever enjoy perfect equality with other children in all public schools and educational institutions of the state."

{6}      Despite general and specific constitutional protections, New Mexico schools have been used to further efforts of assimilation and cultural erasure among Native American and Hispanic children. The historical experience of Native American

3

children has been described in academia as one of assimilation through education "that intentionally sought to destroy their cultural ways of life." Preston Sanchez, Esq. & Rebecca Blum Martinez, PhD., *A Watershed Moment in the Education of American Indians: A Judicial Strategy to Mandate the State of New Mexico to Meet the Unique Cultural and Linguistic Needs of American Indians in New Mexico Public Schools*, 27: Issue 5, Am. U. J. Gender Soc. Pol'y & L. 183, 185 (2019). In addition, notwithstanding explicit constitutional protections, the mandatory use of English in educational spaces furthered the effort to erase the Spanish language. Robert Milk, *The Issue of Language in Education in Territorial New Mexico*, 7 Bilingual Rev./LA Revista Belingüe 212, 214 (1980). An understanding of this history is important because its impact continues to echo throughout the experience of New Mexico's children in modern-day educational institutions,[2] and "has the potential to determine their future outcomes in post-secondary education, the workforce, and in life." Sanchez, *supra*, at 192.

---

[2]For example, New Mexico's Department of Education and the University of New Mexico identified themes in education that created barriers to the educational success of Native American students. The study determined that the performance of Native American students was greatly affected by 1) educators who were uninformed about Native American culture and values, 2) Native American students' low self-esteem and high rates of absenteeism, and 3) their experience of prejudice and low academic expectations set by educators. Sanchez, *supra*, at 201.

{7}     The Legislature enacted the NMHRA to address the effects of New Mexico's past and to further the Act's purpose to "eliminate and prevent discrimination on the basis of race" in the future. *Keller v. City of Albuquerque*, 1973-NMSC-048, ¶ 23, 85 N.M. 134, 509 P.2d 1329, *overruled on other grounds by Green v. Kase*, 1992-NMSC-004, ¶ 2, 113 N.M. 76, 823 P.2d 318. The holding of this opinion is firmly grounded in the plain language of the NMHRA. However, the statute's history and background demonstrate that the Legislature intended for public schools to be public accommodations and therefore in some ways accountable under the NMHRA. *See Key v. Chrysler Motors Corp.*, 1996-NMSC-038, ¶ 13, 121 N.M. 764, 918 P.2d 350 (providing that this Court may "consider the statute's history and background" to determine the Legislature's intent).

## II.     DISCUSSION

{8}     Whether a public school is a public accommodation under the NMHRA is a question of law that we review de novo. *Cooper v. Chevron U.S.A., Inc.*, 2002-NMSC-020, ¶ 16, 132 N.M. 382, 49 P.3d 61. "Statutory interpretation is driven primarily by the language in a statute, and the language of remedial statutes, including the [NM]HRA . . . , must be liberally construed." *See Herald v. Bd. of Regents of Univ. of N.M.*, 2015-NMCA-104, ¶ 25, 357 P.3d 438.

**A.    The Plain Language of the NMHRA Informs Us That a Public School Is a Public Accommodation**

{9}    Because "[t]he plain language of the statute is our primary guide to legislative intent," this Court first looks to the language of the NMHRA. *Elane Photography, LLC v. Willock*, 2012-NMCA-086, ¶ 13, 284 P.3d 428 (internal quotation marks and citation omitted), *aff'd*, 2013-NMSC-040, 309 P.3d 53. "[W]hen a statute contains language which is clear and unambiguous, we must give effect to that language and refrain from further statutory interpretation." *Truong v. Allstate Ins. Co.,* 2010-NMSC-009, ¶ 37, 147 N.M. 583, 227 P.3d 73 (internal quotation marks and citation omitted).

{10}    The language of the NMHRA prohibits discrimination by "any person in any *public accommodation*." Section 28-1-7(F) (2019) (emphasis added). Broken into operable parts the NMHRA defines "public accommodation" as "any establishment that provides or offers its services . . . to the public." Section 28-1-2(H) (2007). There is an exception: "a bona fide private club or other place or establishment that is by its nature and use distinctly private" does not fall within the statutory definition. *Id.* We address each part of the statute in turn and begin with whether a public school, as a state entity, can be considered a "person."

**1. A public school, as a state entity, is a person under the NMHRA**

{11} A public, or state operated, entity may be subject to suit under the NMHRA because it is a "person" under the Act. The statute clearly prohibits discrimination by "any person in any public accommodation" and the Act defines "person" to include "the state and all of its political subdivisions." Section 28-1-7(F) (2019);[3] § 28-1-2(A) (2007) (defining "person"). As applied to this case, a state actor is prohibited from discriminating in public accommodations, and a public school, which is operated by the state, may be subject to suit. *See State v. Hoshijo ex rel. White*, 102 Hawai'i 307, 76 P.3d 550, 560-61 (2003) (holding that a state university is a public accommodation and subject to suit under Hawaii's human rights statute where the definition of a "person" includes "the State, or any governmental entity or agency" and the statute mandates that a "*person*" shall not discriminate in public accommodations (emphasis added)).

---

[3]The NMHRA established that "[i]t is an unlawful discriminatory practice for . . . any person in any public accommodation to make a distinction, directly or indirectly, in offering or refusing to offer its services, facilities, accommodations or goods to any person because of race, religion, color, national origin, ancestry, sex, sexual orientation, gender, gender identity, pregnancy, childbirth or condition related to pregnancy or childbirth, spousal affiliation, physical or mental disability or military status . . . ," Section 28-1-7(F) (2024), a provision that essentially remains unchanged since the NMHRA enactment, *see* 1969 N.M. Laws, ch. 196, § 7(F).

**2. A public school is an "establishment that provides or offers its services . . . to the public"**

{12} The Court of Appeals held that "[a] public secondary school . . . is decidedly an institution" which is defined as: "'An established organization, esp[ecially] one of a public character.'" *Johnson*, 2023-NMCA-069, ¶ 9 (alteration in original) (quoting *Black's Law Dictionary* (11th ed. 2019)). We agree and reject Defendants' assertion that the Court of Appeals impermissibly added words to the statutory definition in its reliance on a legal-dictionary term. *Johnson*, 2023-NMCA-069, ¶ 8. In 1968, the year before the enactment of the NMHRA, "school" was defined in *Black's Law Dictionary* (4th ed. 1968) as "[a]n institution or place for instruction or education." The 2019 definition is nearly identical: "An institution of learning and education, esp[ecially] for children." *School*, *Black's Law Dictionary* (11th ed. 2019). The Court of Appeals did not err in using legal-dictionary definitions nor did it go beyond the statute's language to determine that a public school is an establishment because it is an institution.

{13} We now turn to whether a public school "provides or offers its services . . . to the public" and, therefore, satisfies statute's second requirement. Section 28-1-2(H) (2007). Plaintiff makes a common-sense assertion that "APS's educational services are open to all students in the Albuquerque area who are in the appropriate age ranges for elementary, middle school and high school," and thus that APS provides and

8

offers its services to the public. In the APS mission statement, operation goals assert that APS and the school district superintendent "work together and in partnership with families and the community in a systematic way to ensure that all students succeed." Because APS itself has acknowledged public schools as institutions that not only offer services to all school age children but also collaborates with their families and communities, APS therefore embraces the plain language of the statute that a public school is an "establishment that provides or offers its services . . . to the public." *Id*.

### 3. The single statutory exception to the definition of a public accommodation does not apply to public schools

{14} Confronting strong headwinds in the statute's inclusive language, the statute's exception is the only potential refuge for APS's position. The exception provides that a public school is not a public accommodation if it is "a bona fide private club or other place or establishment that is by its nature and use distinctly private." Section 28-1-2(H) (2007). This sole exception to the broadly worded definition of public accommodation is inapplicable to the facts of this case. *See Elane Photography*, 2012-NMCA-086, ¶¶ 14, 18 (holding that the exception did not apply to a photography company which is a public accommodation under the NMHRA). The sole exception's inapplicability is the other side of APS's argument that it does not provide services to the public and is the reason APS's argument fails. We agree

9

with the Court of Appeals' conclusion that public schools do "not restrict [their] services in such a way that could be said to be by its nature and use distinctly private." *Johnson*, 2023-NMCA-069, ¶ 13. The constitutional mandate that public schools in New Mexico be "open to[] all the children" refutes any argument to the contrary. *See* N.M. Const. art. XII, § 1.

**B.    The *Regents* Court's Holding That a Public University Is Not a Public Accommodation Under the NMHRA Was Incorrectly Decided and Is Overruled**

{15}    In *Regents*, this Court considered "whether the University of New Mexico, in administering its academic program, is a 'public accommodation'" under the NMHRA. 1981-NMSC-026, ¶ 6. In that case, a nursing student alleged unlawful racial discrimination when the University gave her a failing grade and did not allow her to immediately retake the course. *Id.* ¶ 1. The Court held that the University of New Mexico is not a "public accommodation," specifically within "the University's manner and method of administering its academic program." *Id.* ¶¶ 11, 16. The Court declined to reach the "question of whether in a different set of circumstances the University would be a 'public accommodation.'" *Id.* ¶ 16. This holding created a distinction for discriminatory conduct perpetrated in the "manner and method of administering its academic program" without citing authority and without supporting analysis.

10

{16}     The Court of Appeals held that *Regents* did not apply to this case. *Johnson*, 2023-NMCA-069, ¶¶ 1-2. Specifically, the distinction established in *Regents* did not apply because the facts of this case arose from "the spontaneous actions and remark . . . by a single teacher on a single occasion" rather than "any specified manner or method of administration, such as admission processes." *Id.* ¶ 6. Defendants argue that the Court of Appeals "[i]mpermissibly [r]ejected the [a]pplication of *Regents*" and that the *Regents* Court's judicially created exception for the "'manner and method of administering [an] academic program'" shields Defendants from suit under the NMHRA. We disagree.

{17}     The *Regents* Court's holding is inconsistent with the plain language of the statute and is unsupported by precedent or legislative history. First, the *Regents* Court's determination that "[u]niversities are not public accommodations in the ordinary and usual sense of the words" is unsupported. 1981-NMSC-026, ¶ 15. Further, this statement is incorrect, based on the plain language of the statute. As we have explained, "establishment" and "institution" are synonyms under the Act. The legal-dictionary definition of "college" in the version of *Black's Law Dictionary* available to the *Regents* Court provides that a college "[i]n the most common use of the word, . . . designates an institution of learning. . . . Also applied to all kinds of institutions from universities, or departments thereof." *College*, *Black's Law*

11

*Dictionary* (5th ed. 1979).[4] Based on our plain language interpretation of the statute, the *Regents* Court erred in determining, "Universities are not public accommodations." *Regents*, 1981-NMSC-026, ¶ 15.

{18}     In addition, the *Regents* Court misinterpreted federal law and the evolution of state public accommodations laws in construing the NMHRA. *Id.* ¶¶ 11-15. The Court began its analysis by dedicating two of the three paragraphs of historical review to a review of public accommodations laws, citing to two federal authorities in support. *Id.* ¶¶ 12-13. The Court began by citing to the *Civil Rights Cases*, 109 U.S. 3 (1883), in stating that, at common law, public accommodations laws applied only to places of lodging, eating, and entertainment. *Regents*, 1981-NMSC-026, ¶ 12. The Court explained that some state statutes expanded upon these establishments and specifically included universities. *Id*. ¶ 13. Noting that Title II of the Civil Rights Act did not make such a change, and that New Mexico's Public Accommodations Act did not specifically include universities, the Court then concluded, without supportive authority, that New Mexico's adoption of a "general, inclusive clause in the Human Rights Act" did not mean the Legislature intended to include establishments that had been traditionally excluded. *Id*. ¶ 13-14. However,

---

[4]The current edition also defines "college" as "[a]n institution of learning . . . ." *College*, *Black's Law Dictionary* (12th ed. 2024).

12

the *Regents* Court neglected to take into consideration that New Mexico's Public Accommodations Act went far beyond the common law categories of "lodging, eating, and entertainment," and included such establishments as dispensaries, hospitals, clinics, and public libraries.

{19} *Regents* errs in its analysis of legislative history and misconstrues the 1955 Public Accommodations Act, which the NMHRA repealed upon its enactment twelve years before *Regents*. *See* 1969 N.M. Laws, ch. 196 (repealing 1955 N.M. Laws, "Chapter 192, Sections 1 through 6"). Refusing to look beyond the historic definition, the Court stated, "We do not feel that the legislature, by including a general, inclusive clause in the [NMHRA], intended to have all establishments that were historically excluded, automatically included." *Id*. This is a misapprehension of the Public Accommodations Act, which did not incorporate only the common law categories, but instead applied to a wide range of establishments. Public Accommodations Act, 1955 N.M. Laws, ch. 192, § 5. In light of this, the Legislature's decision to adopt a general inclusive definition in the NMHRA can hardly be read as evidence that it intended to exclude establishments not included at common law. Accordingly, we overturn *Regents* in its holding that a university in its "manner and method of administering its academic program" is not a public accommodation.

13

{20} Defendants suggest two additional reasons to support their argument that a public school is not a public accommodation under the NMHRA. First, they argue that public schools do not warrant independent evaluation as to whether they are public accommodations because schools are traditional and historic and existed at the time the 1955 Public Accommodations Act was enacted. Second, they argue that a public accommodation must be a commercial business. Defendants fail on both points.

{21} Defendant's reasoning why schools fall outside of the statute fails to ensure a harmonious reading of the NMHRA and the NMHRA's legislative history in pari materia, which confirms the legislative intent that public schools are public accommodations prohibited from discriminatory conduct. *State v. Sena*, 2023-NMSC-007, ¶ 2, 528 P.3d 631 (reaffirming that it is the Court's role to read statutes harmoniously if possible). Section 28-1-4 (1987) documents the powers and duties of the Human Rights Commission, *see* § 28-1-3 (1987) (establishing that Commission), and the Labor Relations Division, *see* § 28-1-2(D) (1987) (identifying that Division), including their responsibility to address discrimination in public education. The statute provides that in its "endeavor to eliminate prejudice and to further good will," the Division "in cooperation with the state department of public education and local boards of education shall encourage an educational program for

14

all residents of the state, calculated to eliminate prejudice, its harmful effects and its incompatibility with principles of fair play, equality and justice." Section 28-1-4(B)(4) (1987). Therefore, the Legislature intended the NMHRA to address discrimination in public schools in an "endeavor to eliminate prejudice." *Id.*

{22} The Public Accommodations Act, the predecessor to the NMHRA, defined public accommodations with a listing of specific, qualifying establishments that did not explicitly include public schools. 1955 N.M. Laws, ch. 192, § 5. In 1969, the NMHRA replaced this listing with the definition of a public accommodation: "any establishment that provides or offers its services, facilities, accommodations or goods to the public," 1969 N.M. Laws, ch. 196, § 2.G, a provision that persists in Section 28-1-2(H) (2007). "[T]he Legislature explicitly amended the wording of the statute to remove the narrow and specifically enumerated traditional *places* of public accommodation." *See Elane Photography*, 2012-NMCA-086, ¶ 14 (emphasis added); *see also* § 28-1-7(F) (2019) (listing numerous, categorically discriminatory *practices* prohibited "in any public accommodation" under the NMHRA).

{23} The "'language of the federal Civil Rights Act'" and the context of the civil rights movement that predate the NMHRA support the conclusion that the Legislature did not intend to limit the definition of a "public accommodation" when it replaced the Public Accommodations Act's definition. *See Ocana v. American*

*Furniture Co.*, 2004-NMSC-018, ¶ 23, 135 N.M. 539, 91 P.3d 58 (citation omitted). "[W]e may look at federal civil rights adjudication for guidance in interpreting the NMHRA." *Id.* The "federal 1964 Civil Rights Act" provided that a public accommodation includes '[e]stablishments . . . supported in their activities by [s]tate action." *Johnson*, 2023-NMCA-069, ¶ 17 (alterations in original) (citation omitted); *see* 42 U.S.C. § 2000a(a)-(b) (prohibiting, under the federal act's public accommodations subchapter, "discrimination or segregation on the ground of race, color, religion, or national origin" in "places of public accommodation . . . affecting interstate commerce"). The Legislature would not have intended for its 1969 definition of a "public accommodation" to restrict the NMHRA's protections to protections under the federal definition of "public accommodation" and in the context of the civil rights movement.

{24}    The Legislature's intent to protect a specific class of people, from a specific form of discrimination, during a specific time in our state's history, does not mean that the Legislature did not have the general intent to prohibit discrimination in public schools. The unfortunate fact that our state and federal law have sought to prohibit discrimination against different groups at different points in history does not influence our analysis and, if considered, would continue to perpetuate historic

16

inequities.[5] Adopting Defendant's logic that this Court should not consider race-based history because the NMHRA protects against other categories of discrimination would mean that we would be limited to the history of the specific form of discrimination at issue and, for example, would have a great amount of difficulty proving a legislative intent to prohibit discrimination on the basis of sexual orientation at the NMHRA's enactment in 1969. Accordingly, the plain language of the NMHRA and legislative history do not support Defendant's argument that a public school is not a public accommodation, because it existed at the Public Accommodations Act's enactment.

{25} In addition, the history of the NMHRA supports our holding that the definition of a public accommodation is not limited to commercial businesses. The Public Accommodations Act defined the term with a list of qualifying establishments. This list was followed by the explicit exclusion of "any institution, club, or place of accommodation which is in its nature distinctly private." Public Accommodations Act, 1955 N.M. Laws, ch. 192, § 5. Many of the listed places were commercial

---

[5]For example, in 1954, *Brown v. Board of Education* held that the segregation of public schools based on race was unconstitutional. 347 U.S. 483, 494-95 (1954). It was not until 1995 that a federal court explicitly extended the same equal protection principles to Native American children on the Navajo Nation without access to a public school. *Meyers v. Bd. of Educ. of San Juan Sch. Dist.*, 905 F. Supp. 1544, 1563-64 (D. Utah 1995).

17

businesses, but the list also included establishments that are traditionally public, like swimming pools, public libraries, and public transportation. *Id.* Therefore, the Legislature intended for the definition to apply to previously unlisted, but not previously excluded, establishments such as public schools.

{26} Additionally, caselaw does not create such bright line limitations on an establishment's commercial nature as Defendants suggest in reliance on *Elane Photography*, 2012-NMCA-086. There, the Court of Appeals considered whether a photography company that refused to photograph a same sex commitment ceremony was a public accommodation under the NMHRA. *Id.* ¶¶ 1, 9. The Court addressed the argument that the "artistic nature" of the company's services meant that it was not a public accommodation. *Id.* ¶ 17. The opinion clarified that the company was a public accommodation because it did "offer its goods or services to the general public as a part of modern commercial activity." *Id.* Thus, *Elane Photography* did not impose the requirement that a public accommodation *must* be a commercial business, but it analyzed the application of the NMHRA *to* a commercial business. 2012-NMCA-086, ¶¶ 12, 18 ("[T]his Court should independently evaluate the applicability of the NMHRA in *all* future cases." (emphasis added)).

{27} Adopting the narrow construction of the NMHRA, as advanced by Defendants, would contravene the Legislature's intent that the NMHRA combat

discrimination and provide no real remedy for discrimination in public schools. Defendants argue that the application of NMHRA to include public schools will hinder important academic discussions about controversial historical topics due to concerns that academic discussion veers to discrimination. This argument could be compelling. However, as one of the first steps in the administrative process, the Human Rights Commission is tasked with determining whether discrimination has occurred and is equipped to weigh the facts of a case and the interests of meaningful academic discussions to reach their determination. *See* § 28-1-4(A)(1)-(2) (providing that the commission may hear complaints, issue orders, hold hearings, subpoena witnesses, and take testimony); *see also* § 28-1-11(E) (stating that the commission "shall make written findings of fact, conclusions of law[,] and its decision based upon the findings of fact and conclusions of law" if "the commission finds from the evidence presented at any hearing . . . that the respondent has engaged in a discriminatory practice"); *see also Sonntag v. Shaw*, 2001-NMSC-015, ¶ 13, 130 N.M. 238, 22 P.3d 1188 (holding that a plaintiff must exhaust administrative remedies "before bringing an action in district court" under the NMHRA). An interpretation that public schools are a public accommodation under the NMHRA would not "defeat the legislature's intentions" in the way that refusing to apply the NMHRA to public schools as a public accommodation would. *See generally Trujillo*

*v. Romero*, 1971-NMSC-020, ¶ 18, 82 N.M. 301, 481 P.2d 89 ("We should consider the consequences of various possible constructions and should not adopt a construction which would defeat the legislature's intentions, or lead to absurd results.").

{28}   Absent application of the NMHRA, there is no available remedy for such discrimination under New Mexico law. The New Mexico Torts Claims Act (TCA) would not protect against discriminatory acts unless they resulted in "bodily injury, wrongful death, or property damage caused by the negligence of public employees while acting within the scope of their duties . . . ." *See* NMSA 1978 § 41-4-6(A) (2007). Providing no state remedy to students who are the target of discrimination that does not result in the TCA's requisite damages would be inconsistent with the purpose of the NMHRA to eliminate such discrimination. *See Keller*, 1973-NMSC-048, ¶ 23. We conclude that "Finding that educational institutions are public accommodations under the [NMHRA] would be the most logical way to provide a remedy for discrimination by educational institutions, because no remedy is otherwise expressly provided in New Mexico." Todd Heisey, *Human Rights Commission v. Board of Regents: Should a University Be Considered a Public Accommodation under the New Mexico Human Rights Act*, 12 N.M. L. Rev. 541, 547-48 (1982).

**III.    CONCLUSION**

{29}    We overrule *Regents* and hold that a public school is a public accommodation under the plain language of the NMHRA. We therefore affirm the holding of the Court of Appeals and we remand to the district court for review consistent with this opinion.

{30}    **IT IS SO ORDERED.**

_____
**DAVID K. THOMSON, Chief Justice**

**WE CONCUR:**

_____
**MICHAEL E. VIGIL, Justice**

_____
**C. SHANNON BACON, Justice**

_____
**JULIE J. VARGAS, Justice**

_____
**BRIANA H. ZAMORA, Justice**

21