**Certiorari Granted, August 16, 2012, No. 33,687**

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number:  2012-NMCA-086**

**Filing Date: May 31, 2012**

**Docket No. 30,203**

**ELANE PHOTOGRAPHY, LLC,**

     **Plaintiff-Appellant,**

**v.**

**VANESSA WILLOCK,**

     **Defendant-Appellee.**

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Alan M. Malott, District Judge**

Becht Law Firm
Paul Becht,
Albuquerque, NM

Jordan W. Lorence,
Washington, D.C.

James A. Campbell,
Scottsdale, AZ

for Appellant

Tobias Barrington Wolff,
Philadelphia, PA

Lopez & Sakura, LLP
Julie Sakura,
Santa Fe, NM

Sarah Steadman,
Santa Fe, NM

for Appellee

**OPINION**

**GARCIA, Judge.**

**{1}** This appeal arose from the refusal of Elane Photography, LLC (Elane Photography), to photograph the commitment ceremony of Vanessa Willock (Willock) and her same-sex partner (Partner). Elane Photography denied Willock's request to photograph the ceremony based upon its policy of refusing to photograph images that convey the message that marriage can be defined to include combinations of people other than the union of one man and one woman. Elane Photography's owners are Christians who believe that marriage is a sacred union of one man and one woman. They also believe that photography is an artistically expressive form of communication and photographing a same-sex commitment ceremony would disobey God and the teachings of the Bible by communicating a message contrary to their religious and personal beliefs. We conclude that Elane Photography's refusal to photograph Willock's ceremony constitutes a violation of NMSA 1978, Section 28-1-7(F) (2004) of the New Mexico Human Rights Act (NMHRA). As a result, we affirm the decision of the district court in favor of Willock.

**I.      FACTUAL AND PROCEDURAL HISTORY**

**A.      Factual History**

**{2}** Elane Photography is a limited liability company owned by Elaine and Jonathan Huguenin. Elaine Huguenin also serves as Elane Photography's head photographer. Elane Photography offers photography services to the public on a commercial basis and primarily photographs significant life events such as weddings and graduations. However, Elane Photography has a policy of only photographing life events that communicate messages consistent with the Huguenin's personal and religious beliefs. Elane Photography solicits customers by offering its services through its website, advertisements on multiple search engines, and in the Yellow Pages.

**{3}** This case arose when Willock, who was involved in a same-sex relationship, emailed Elane Photography to inquire about photography for her upcoming commitment ceremony. Willock indicated in the email that this would be a "same-gender ceremony." Elane Photography quickly responded, thanking Willock for her interest but explaining that Elane Photography photographs "traditional weddings." Unsure what Elane Photography meant by "traditional weddings," Willock sent a second email asking Elane Photography to clarify whether it "does not offer [its] photography services to same-sex couples." Elane Photography responded affirmatively, stating, "[y]es, you are correct in saying we do not photograph same-sex weddings," and again thanked Willock for her interest in Elane Photography.

**{4}** Partner, without disclosing her same-sex relationship with Willock, sent an email to Elane Photography the next day. The email mentioned that Partner was getting married but did not specify whether the marriage was same-sex or "traditional." Partner also asked Elane Photography whether it would be willing to travel for a wedding. Elane Photography responded that it would be willing to travel and included pricing information. Elane Photography also offered to meet with Partner to discuss options. When Elane Photography did not hear back from Partner, it sent a follow-up email to determine if Partner had any questions about the offered services.

### B.    Procedural History

**{5}** In December 2006, Willock filed a discrimination claim with the New Mexico Human Rights Commission (NMHRC) alleging that Elane Photography refused to offer its photographic services to Willock because of her sexual orientation. The NMHRC determined that Elane Photography was a "public accommodation" under NMSA 1978, Section 28-1-2(H) (2007). The NMHRC further determined that the evidence demonstrated that Elane Photography violated Section 28-1-7(F) by discriminating against Willock based upon her sexual orientation. The NMHRC ordered Elane Photography to pay Willock $6,637.94 in attorney fees and costs. Willock did not seek monetary damages.

**{6}** Elane Photography appealed to the district court, invoking the district court's original and appellate jurisdiction. It asked the court to review the NMHRC's determination and to consider whether the NMHRC's interpretation of the NMHRA violated (1) Elane Photography's right to freedom of speech under the First Amendment of the United States Constitution and Article II, Section 17 of the New Mexico Constitution; (2) Elane Photography's rights under the free exercise clause of the First Amendment to the United States Constitution and Article II, Section 11 of the New Mexico Constitution; and (3) Elane Photography's rights under the New Mexico Religious Freedom Restoration Act (NMRFRA), NMSA 1978, Sections 28-22-1 to -5 (2000). Both parties filed motions for summary judgment. The district court denied Elane Photography's motion and granted Willock's motion for summary judgment. The district court upheld the NMHRC's determinations that Elane Photography was a "public accommodation" under the NMHRA and that Elane Photography violated the NMHRA by discriminating against Willock based upon her sexual orientation. In its memorandum opinion and order, the district court also rejected Elane Photography's constitutional and statutory arguments based upon freedom of speech, freedom of religion, and the NMRFRA. Elane Photography filed a timely appeal to this Court.

## II.    DISCUSSION

**{7}** Elane Photography contends that Willock failed to establish a violation of the NMHRA, and that applying the NMHRA under these circumstances would violate federal and state constitutional law as well as state statutory law. Elane Photography also argues that application of the NMHRA violates the NMRFRA. An appeal from a grant of a motion

3

for summary judgment presents a question of law and is reviewed de novo. *Self v. United Parcel Serv., Inc.*, 1998-NMSC-046, ¶ 6, 126 N.M. 396, 970 P.2d 582.

**A.     The New Mexico Human Rights Act**

**{8}**     The NMHRA  prohibits "any person in any *public accommodation* to make a distinction, directly or indirectly, in offering or refusing to offer its services . . . to any person because of race, religion, color, national origin, ancestry, sex, *sexual orientation*, gender identity, spousal affiliation[,] or physical or mental handicap." Section 28-1-7(F) (emphasis added). Elane Photography argues that it did not violate the NMHRA for two reasons:  (1) it is not a "public accommodation," and (2) it did not make any distinction based on sexual orientation in refusing its services to Willock

**1.     Public Accommodation**

**{9}**     Elane Photography focuses its initial argument on the issue of whether it is a "public accommodation" pursuant to the NMHRA. **[BIC 11-15**] A "public accommodation" is "any establishment that provides or offers its services . . . to the public, but does not include a[n] . . . establishment that is by its nature and use distinctly private." Section 28-1-2(H).

**{10}**     Elane Photography argues that the analytical framework set forth in *Human Rights Comm'n of N. M. v. Board of Regents of Univ. of N. M.*, 95 N.M. 576, 577-78, 624 P.2d 518, 519-20 (1981), requires this Court to legally determine that it is not a public accommodation within the meaning of the NMHRA because it does not fall within the historic and traditional categories of public accommodation. In *Regents*, our Supreme Court looked to the previous New Mexico statute, federal law, and the historical and traditional meanings of "public accommodation" at that time for guidance in applying the new statutory change to a specific higher education context. *Id.* Elane Photography emphasizes that *Regents* is the first and only New Mexico case to address the question of what constitutes a "public accommodation" for purposes of the NMHRA and urges this Court to adopt a broad reading of *Regents* in this case.  Following the reasoning discussed in *Regents*, Elane Photography argues that "[t]raditional public accommodations provide standardized products or ministerial services that are essential to the public at large."  Accordingly, Elane Photography contends that because it provides "nonessential, discretionary, unique, and expressive services to the public," it "does not fit within, or even remotely resemble" any of the traditional meanings of a public accommodation. Such a broad application of *Regents*, however, would directly contradict our Supreme Court's instructions regarding the limited application of this particular case. *Id.* at 578, 624 P.2d 520.

**{11}**     In *Regents*, our Supreme Court specifically held that "the University's manner and method of administering its academic [nursing] program" was not a "public accommodation" under the NMHRA. *Id.* In making this determination, our Supreme Court recognized the newly expanded general application of the NMHRA. *Id.* However, the Supreme Court felt that the Legislature did not intend this expanded statutory language "to [automatically

4

include] all establishments that were historically excluded . . . as public accommodations." *Id.* In its ruling, the Supreme Court carefully limited its holding and specifically stated that "[t]his opinion should be construed narrowly and is limited. . . . We reserve the question of whether in a different set of circumstances the University would be a 'public accommodation' and subject to the jurisdiction of the [NMHRC]." *Id.* No other guidance was provided by the Supreme Court to address the Legislature's expansion of the NMHRA to other public accommodations outside the unique academic circumstances analyzed in *Regents*.

**{12}** When our Supreme Court specifically reserved any determination of whether the University would be a public accommodation under a different set of circumstances and did not analyze the extent that the NMHRA expanded the application of a "public accommodation" to other non-traditional and non-historic types of businesses, it signaled that this Court should independently evaluate the applicability of the NMHRA in all future cases. *Id.*; *see Ottino v. Ottino*, 2001-NMCA-012, ¶ 10, 130 N.M. 168, 21 P.3d 37 (stating that where the Supreme Court has expressly refrained from deciding a question, the lower courts are not bound by the prior precedent); *Bogle Farms, Inc. v. Baca*, 1996-NMSC-051, ¶¶ 19-20, 36, 122 N.M. 422, 925 P.2d 1184 (recognizing that similar precedent will not be binding where an issue must be decided on a case-by-case basis). As a result, we will review all of the applicable authority to analyze whether Elane Photography is a "public accommodation." *See Ocana v. Am. Furniture Co.*, 2004-NMSC-018, ¶ 23, 135 N.M. 539, 91 P.3d 58 (recognizing that when it is considering claims under the NMHRA, our Supreme Court will look at federal civil rights adjudication for guidance in interpreting the NMHRA).

**{13}** Having determined that our Supreme Court's analysis in *Regents* is narrow and has limited application to the facts of this case, we begin our analysis by looking at the language of the statute to ascertain the present scope of the NMHRA. *See Santillo v. N.M. Dep't of Pub. Safety*, 2007-NMCA-159, ¶ 17, 143 N.M. 84, 173 P.3d 6 ("The plain language of the statute is our primary guide to legislative intent, and we will give persuasive weight to any administrative construction of statutes by the agency charged with administering them."); *Bd. of Educ. v. N.M. State Dep't of Pub. Educ.*, 1999-NMCA-156, ¶ 16, 128 N.M. 398, 993 P.2d 112 ("The primary purpose of statutory interpretation is to ascertain and give effect to legislative intent." (internal quotation marks and citation omitted)). When addressing the plain language of a statute, the words are given their ordinary meaning, and we will not resort to further interpretation unless the language is ambiguous. *Truong v. Allstate Ins. Co.*, 2010-NMSC-009, ¶ 37, 147 N.M. 583, 227 P.3d 73 ("[W]hen a statute contains language [that] is clear and unambiguous, we must give effect to that language and refrain from further statutory interpretation." (internal quotation marks and citation omitted)); *Marbob Energy Corp. v. N.M. Oil Conservation Comm'n*, 2009-NMSC-013, ¶ 9, 146 N.M. 24, 206 P.3d 135 ("Only if an ambiguity exists will we proceed further in our statutory construction analysis."); *N.M. Indus. Energy Consumers v. N.M. Pub. Regulation Comm'n*, 2007-NMSC-053, ¶ 20, 142 N.M. 533, 168 P.3d 105. Elane Photography does not claim that the language used in Section 28-1-2(H) is ambiguous. Instead, Elane Photography asks this Court to determine either that photography does not involve an essential service under the prior

statute's more narrow interpretation of "public accommodations," or to recognize an exception for any business that includes a creative, expressive, or artistic component protected by the First Amendment. It is well recognized that we "will not read into a statute . . . language which is not there, particularly if it makes sense as written." *Johnson v. N.M. Oil Conservation Comm'n*, 1999-NMSC-021, ¶ 27, 127 N.M. 120, 978 P.2d 327 (internal quotation marks and citation omitted).

**{14}** Willock points out, and we agree, that the expansive language of the current NMHRA "extends protection to 'services' and 'goods' as well as 'facilities' and accommodations,' making [it] clear that [the NMHRA] reaches commercial activity beyond the nineteenth-century paradigm of an inn, restaurant, or public carrier." It should be emphasized that the Legislature explicitly amended the wording of the statute to remove the narrow and specifically enumerated traditional places of public accommodation relied upon by Elane Photography. *See* NMSA 1953, § 49-8-5 (1955 Supp.). The Legislature replaced the narrowly identified places of public accommodation with the broad definition of "any establishment that provides or offers its services, facilities, accommodations or goods to the public." Section 28-1-2(H). This broadly worded definition includes only one exception and that exception is inapplicable in this case. *See id.* Consistent with the Supreme Court's instructions in *Ocana*, we are now able to review decades of precedent from other jurisdictions that has developed since the decision in *Regents* and will assist us in our analysis of the broader language in the NMHRA. *Ocana*, 2004-NMSC-018, ¶ 23.

**{15}** Cases addressing public accommodations statutes with similarly broad language support a national trend that has expanded the traditional definition of business activity that constitutes a "public accommodation." *See Roberts*, 468 U.S. at 626; *D'Amico v. Commodities Exch. Inc.*, 652 N.Y.S.2d 294, 296 (N.Y. App. Div. 1997); *Burks v. Poppy Constr. Co.*, 370 P.2d 313, 317 (Cal. 1962) (in bank); *Pa. Human Relations Comm'n v. Alto-Reste Park Cemetery Ass'n*, 306 A.2d 881, 885-87 (Pa. 1973). For example, in *Roberts*, 468 U.S. at 612, 616, the United States Supreme Court addressed constitutional attacks on a Minnesota Supreme Court opinion holding that a non-profit membership organization whose bylaws limited membership to men was a public accommodation. The United States Supreme Court noted that "Minnesota has adopted a functional definition of public accommodations that reaches various forms of public, quasi-commercial conduct." *Id.* at 625. The United States Supreme Court reasoned that "[t]his expansive definition reflects a recognition of the changing nature of the American economy." *Id.* at 626. The United States Supreme Court also emphasized that the "fundamental object [of civil rights] was to vindicate the deprivation of personal dignity that surely accompanies [the] denial[] of equal access to public establishments." *Id.* at 625 (internal quotation marks and citation omitted).

**{16}** The Superior Court of New Jersey supported a similarly expansive definition of a public accommodation, concluding "that the hallmark of a place of public accommodation [is] that 'the public at large is invited[.]'" *Nat'l Org. for Women v. Little League Baseball, Inc.*, 318 A.2d 33, 37 (N.J. Super. Ct. App. Div. 1974). The Superior Court also noted that "we are warranted in placing considerable weight on the construction of the statute by the

administrative agency charged by the statute with the responsibility of making it work." *Id.* (alteration, internal quotation marks, and citation omitted).

**{17}** Elane Photography argues that these expanded definitions of public accommodations fail to take into account or distinguish the unique artistic nature of certain services, such as those offered by Elane Photography. However, Elane Photography avoids addressing the critical factor that a photography business does offer its goods or services to the general public as part of modern commercial activity. In response, Willock specifically emphasizes the numerous jurisdictions that have adopted a broad definition of "public accommodation" and have included businesses "providing services to the general public," and have not recognized a special exception for nonessential, artistic or discretionary businesses. *See, e.g.*, *N. Coast Women's Care Med. Grp., Inc. v. San Diego Cnty. Super. Ct.*, 189 P.3d 959, 965 (Cal. 2008) (physician group); *Matter of U.S. Power Squadrons v. State Human Rights Appeal Bd.*, 452 N.E.2d 1199, 1203 (N.Y. 1983) (boating safety courses and membership); *D'Amico*, 625 N.Y.S.2d at 296 (commodities exchange trading floor); *In re Johnson*, 427 P.2d 968, 973 (Wash. 1967) (barber shop); *Crawford v. Kent*, 167 N.E.2d 620, 621 (Mass. 1960) (en banc) (private dance school). Jurisdictions that have recognized broader definitions for public accommodations acknowledge the changing landscape of modern commerce and that the definition of a public accommodation has been expanded over the years. *See Roberts*, 468 U.S. at 626.

**{18}** Today, services, facilities, and accommodations are available to the general public through a variety of resources. Elane Photography takes advantage of these available resources to market to the public at large and invite them to solicit services offered by its photography business. As an example, Elane Photography advertises on multiple internet pages, through its website, and in the Yellow Pages. It does not participate in selective advertising, such as telephone solicitation, nor does it in any way seek to target a select group of people for its internet advertisements. Rather, Elane Photography advertises its services to the public at large, and anyone who wants to access Elane Photography's website may do so. We conclude that Elane Photography is a public business and commercial enterprise. The NMHRA was meant to reflect modern commercial life and expand protection from discrimination to include most establishments that typically operate a business in public commerce. As a result, Elane Photography constitutes a public accommodation under the NMHRA definition and cannot discriminate against any class protected by the NMHRA.

## 2.    Discrimination Based on Sexual Orientation

**{19}** Having determined that Elane Photography constitutes a public accommodation, we must next look at whether Elane Photography violated the NMHRA by discriminating against Willock on the basis of sexual orientation. *See* § 28-1-7(F). The ultimate issue in a discrimination claim is "whether the [challenged entity's] actions were motivated by impermissible discrimination." *Martinez v. Yellow Freight Sys., Inc.*, 113 N.M. 366, 369, 826 P.2d 962, 965 (1992) (internal quotation marks and citation omitted). Again, we rely

on federal adjudications for guidance in analyzing claims brought under the NMHRA. *See Ocana*, 2004-NMSC-018, ¶ 23. In a discrimination case, the complainant has the initial burden of establishing a prima facie case of discrimination, *see McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973), and may do so with direct or indirect proof. *See Martinez*, 113 N.M. at 369, 826 P.2d at 965. "Summary judgment is appropriate where there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law." *Self*, 1998-NMCA-046, ¶ 6.

{20} Elane Photography argues that the district court erred in finding that Elane Photography's policy of categorically refusing to photograph same-sex commitment ceremonies facially discriminates against persons of a certain sexual orientation. Elane Photography claims there is no prima facie case of discrimination because it did not decline photography services to Willock because of her sexual orientation. Rather, Elane Photography "declined [Willock's] request because [Elane Photography] company policy and its owners' sincerely held religious and moral beliefs prohibit photographing images that convey the message that marriage can be defined other than the union of one man and one woman." Thus, Elane Photography argues that its refusal to photograph Willock in one context was not based on her sexual orientation because it would have photographed Willock in a variety of other contexts. "If, instead, for example, Willock had asked Elane Photography to take portrait photos, the[n Elane Photography] would have photographed her." Similarly, Elane Photography would photograph opposite-sex weddings between persons of any sexual orientation. Elane Photography simply could not photograph Willock in the "requested context of a same-sex commitment ceremony because of the message conveyed by that event and thus by their photography." This argument, however, attempts to justify impermissible discrimination by distinguishing Willock's participating in a same-sex commitment ceremony from her status as a member of a protected class and is without merit. In this context the United States Supreme Court has "declined to distinguish between status and conduct." *Christian Legal Soc'y v. Martinez*, ___ U.S. ___, ___, 130 S.Ct. 2971, 2990 (2010); *see also Lawrence v. Texas*, 539 U.S. 558, 575 (2003) ("When homosexual conduct is made criminal by the law of the State, that declaration in and of itself is an invitation to subject homosexual persons to discrimination."). "While it is true that the law applies only to conduct, the conduct targeted by this law is conduct that is closely correlated with being homosexual. Under such circumstances, [the] law is targeted at more than conduct. It is instead directed toward gay persons as a class." *Lawrence*, 539 U.S. at 583 (O'Connor, J., concurring); *see e.g.*, *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 270 (1993) ("A tax on wearing yarmulkes is a tax on Jews.").

{21} Elane Photography also poses another hypothetical situation in support of its argument. The hypothetical involves an African-American photographer's refusal to photograph a Ku-Klux-Klan rally because the photographer wanted to "refrain from using her photography to communicate a message that she finds deeply offensive." Elane Photography claims that "[i]t would be absurd to find (and this Court would, no doubt, decline to conclude) that the photographer discriminated against the Klan member because of his race." This argument fails as a matter of law. As the district court stated that "[o]nce

8

one offers a service publicly, they must do so without impermissible exception. Therefore, [Elane Photography] could refuse to photograph animals or even small children, just as an architect could design only commercial buildings and not private residences." What Elane Photography's hypothetical fails to address is the fact that, like animals, small children, and private residences, the Ku-Klux-Klan is not a protected class. Sexual orientation, however, is protected.

**{22}** We conclude that Willock has met her burden of demonstrating that Elane Photography intentionally discriminated against her because of her sexual orientation. *See Sonntag v. Shaw*, 2001-NMSC-015, ¶ 11, 130 N.M. 238, 22 P.3d 1188 (explaining that to prevail in an employment discrimination cause of action, a plaintiff must demonstrate, by direct or indirect evidence, that a defendant intentionally discriminated against her on the basis of her sex). Elane Photography categorically refuses to photograph same-sex weddings, and told Willock of this categorical refusal in an email. This categorical refusal constitutes direct evidence of impermissible discrimination based upon Willock's sexual orientation and is a violation of the NMHRA. *See Hall v. U.S. Dep't of Labor*, 476 F.3d 847, 854-55 (10th Cir. 2007) (reasoning that direct evidence of discrimination includes "proof of an existing policy which itself constitutes discrimination," or "oral or written statements on the part of a defendant showing a discriminatory motivation" (internal quotation marks and citations omitted)). Elane Photography stated that it only photographs "traditional weddings" in response to Willock's email inquiry regarding her same-sex commitment ceremony. Willock asked for clarification of the meaning of "traditional weddings" in a follow-up email to which Elane Photography responded "we do not photograph same-sex weddings." Elane Photography openly stated its discriminatory policy: "[w]e have chosen not to photograph anything that's contrary to our belief that marriage is between one woman and one man." Additionally, Willock points to the distinction between Elane Photography's response to her inquiry regarding a same-sex commitment ceremony and Elane Photography's response to Partner's inquiry that did not specify that the ceremony was same-sex as indirect evidence of discrimination.

**{23}** Only one conclusion could be drawn from the above evidence—that Elane Photography discriminated against Willock for invalid reasons. As a result, Willock has made a prima facie case of discrimination in violation of Section 28-1-7(F). Willock presented sufficient evidence to prove that in refusing to photograph Willock's same-sex ceremony, Elane Photography made a distinction based on Willock's sexual orientation. Because this evidence was not materially in dispute, we affirm the district court's denial of Elane Photography's motion for summary judgment and the grant of Willock's motion for summary judgment based upon the NMHRA.

## B.  FREEDOM OF EXPRESSION

**{24}** Having determined that Elane Photography violated the NMHRA, we must also look at whether applying the NMHRA under these circumstances would nonetheless violate Elane Photography's freedom of expression protected by the federal and state constitutions. *See*

U.S. Const. amend. I; N.M. Const. art. II, § 17.  Elane Photography contends that "[t]he wedding photography produced by Elane Photography,  as well as the artistic skills and creative processes that [Elane Photography] uses to create those photographs, constitutes artistic expression entitled to First Amendment protection."  The First Amendment's freedom of expression applies not only to the written or spoken word, but also to expressive conduct and artistic expression. *See Rumsfeld v. Forum for Academic & Inst. Rights, Inc.*, 547 U.S. 47, 65-66 (2006); *Nat'l Endowment for the Arts v. Finley*, 524 U.S. 569, 602-03 (1998).  As a result, "photography . . . that has a communicative or expressive purpose enjoys some First Amendment protection." *Gilles v. Davis*, 427 F.3d 197, 212 n.14 (3rd Cir. 2005); *see Kaplan v. California*, 413 U.S. 115, 119-20 (1973) ("[P]ictures, films, paintings, drawings, and engravings, . . . have First Amendment protection[.]").  The protection is not lost simply because compensation is paid. *See Riley v. Nat'l Fed'n of the Blind of N.C., Inc.*, 487 U.S. 781, 801 (1988).  "However, the fact that some photography qualifies as expressive conduct entitled to First Amendment protection does not mean that any commercial activity that involves photography falls under the umbrella of the First Amendment." *State v. Chepilko*, 965 A.2d 190, 199 (N.J. Super. Ct.  App. Div. 2009) (recognizing that most commercial conduct is not expressive and even overlapping conduct by a photographer is not entitled to First Amendment protection).

**{25}**    Elane Photography seeks to shield its commercial conduct from governmental regulation on the basis of the First Amendment's protection of expression.  As such, the threshold question is whether Elane Photography's conduct is predominantly expressive. *See id.*; *Rumsfeld*, 547 U.S. at 66 (holding that First Amendment protection extends "only to conduct that is inherently expressive").  "It is possible to find some kernel of expression in almost every activity a person undertakes . . . but such a kernel is not [always] sufficient to bring the activity within the protection of the First Amendment." *City of Dallas v. Stanglin*, 490 U.S. 19, 25 (1989).  Under some circumstances, even conduct that is usually expressive may not be intended to express any message and, therefore, would not be entitled to First Amendment protection. *See Hurley v. Irish-American Gay, Lesbian and Bisexual Grp. of Boston*, 515 U.S. 557, 568 (1995) (stating that although marchers in a parade are typically expressing a collective point and therefore entitled to First Amendment protection, marching with no purpose except to reach a destination is not entitled to First Amendment protection).

**{26}**    Similarly, the First Amendment does not apply when a law regulates conduct rather than expression. *See Rumsfeld*, 547 U.S. at 66.  In *Rumsfeld*, the United States Supreme Court rejected a law school's claim that the Solomon Amendment, which required universities to treat military recruiters equal to other recruiters, impermissibly regulated the school's expressive activities. *Id.* at 51-55, 70.  The Court explained that "the Solomon Amendment regulates conduct, not speech.  It affects what law schools must do—afford equal access to military recruiters—not what they may or may not say." *Id.* at 60 (emphasis omitted).  In an attempt to distinguish *Rumsfeld*, Elane Photography argues it did not deal with an inherently expressive activity.  **[BIC 22-25]** But the mere fact that a business provides a good or service with a recognized expressive element does not allow the business

10

to engage in discriminatory practices. *See Hishon v. King & Spalding*, 467 U.S. 69, 78 (1984) (holding that a law firm may not shield discriminatory hiring or promotion practices with the First Amendment despite "the activities of lawyers [making] a distinctive contribution . . . to the ideas and beliefs of our society" (internal quotation marks and citation omitted)).

**{27}** Similarly, we are unpersuaded by Elane Photography's argument that a photographer serves as more than a mere conduit for another's expression. *See Turner Broad. Sys., Inc., v. F.C.C.*, 512 U.S. 622, 629 (1994) (explaining that a cable operator serves as a conduit for speech and is not a speaker itself). While Elane Photography does exercise some degree of control over the photographs it is hired to take, in that "it decides which pictures to take, which pictures to edit, and how to edit them[,]" this control does not transform the photographs into a message from Elane Photography. In *Hurley*, the United States Supreme Court explained that requiring a parade to include openly gay, lesbian and bisexual decedents or Irish immigrants would essentially force the parade to disseminate their message. 515 U.S. at 570. This was because, in essence, "[p]arades and demonstrations . . . are not understood to be . . . neutrally presented." *Id.* at 576. In contrast, *Rumsfeld* explained that dissimilar treatment of military recruiters was "expressive only because the law schools accompanied their conduct with speech explaining it." 547 U.S. at 66. For example, "[a]n observer who sees military recruiters interviewing away from the law school has no way of knowing whether the law school is expressing its disapproval of the military['s practices], all the law school's interview rooms are full, or the military recruiters decided . . . that they would rather interview someplace else." *Id.*

**{28}** Here, as in *Rumsfeld*, the NMHRA regulates Elane Photography's conduct in its commercial business, not its speech or right to express its own views about same-sex relationships. As a result, Elane Photography's commercial business conduct, taking photographs for hire, is not so inherently expressive as to warrant First Amendment protections. The conduct of taking wedding or ceremonial photographs, unaccompanied by outward expression of approval for same-sex ceremonies, would not express any message from Elane Photography. Similar to *Rumsfeld*, an observer who merely sees Elane Photography photographing a same-sex commitment ceremony has no way of knowing if such conduct is an expression of Elane Photography's approval of such ceremonies. Instead, such an observer might simply assume that Elane Photography operates a business for profit and will accept any commercially viable photography job. Without Elane Photography's explanatory speech regarding its personal views about same-sex marriage, an observer might assume Elane Photography rejected Willock's request for any number of reasons, including that Elane Photography was already booked, or did not want to travel. Finally, even if Elane Photography chose to publically display or use photographs of Willock's same-sex ceremony for its own business purposes, an observer might simply assume the photographs reflect the quality of their work. In no context would Elane Photography's conduct alone send a message of approval for same-sex ceremonies. Without explanatory speech, the act of photographing a same-sex ceremony does not express any opinions regarding same-sex commitments, or disseminate a personal message about such ceremonies.

11

**{29}** Similarly, unlike the parade organizers in *Hurley*, here, Elane Photography is not the speaker. By taking photographs, Elane Photography does not express its own message. Rather, Elane Photography serves as a conduit for its clients to memorialize their personal ceremony. Willock merely asked Elane Photography to take photographs, not to disseminate any message of acceptance or tolerance on behalf of the gay community. Moreover, the NMHRA prohibits discriminating in services offered to the public, but it does not require Elane Photography to identify with its clients or publically showcase client photographs. Elane Photography generally retains copyright on all photographs and displays them on Elane Photography's website, but as Willock points out, these are "discretionary business practices." Elane Photography could choose not to retain the copyright or otherwise display the photographs for viewing. Without Elane Photography taking further actions to broadcast or disseminate the Willock photographs, Elane Photography's conduct in accepting or refusing services does not express a message. As a result, regulating Elane Photography's discriminatory conduct does not violate the First Amendment.

**{30}** The NMHRA does not force Elane Photography to endorse any message or modify its own speech in any way. Rather, the NMHRA requires Elane Photography merely to offer its photography services without discrimination against any member of a protected class. As such, the NMHRA is a neutral regulation of commercial conduct and does not infringe upon freedom of speech or compel unwanted expression, and we affirm the district court's decision on that issue.

## C.    FREEDOM OF RELIGIOUS EXERCISE

**{31}** Elane Photography also argues that "applying the [NM]HRA to force Elane Photography to photograph Willock's ceremony, and thus engage in conduct that its owners believe is disobedient to God's commands, would infringe [on Elane Photography's] and its owners' free[]exercise of religion under the [f]ederal and [s]tate [c]onstitutions." Elane Photography argues that this Court should apply a strict scrutiny analysis for three reasons: (1) the New Mexico state constitution provides broader protections than the federal constitution, (2) the NMHRA is not generally applicable, and (3) the hybrid rights theory mandates strict scrutiny.

### 1.    The New Mexico Constitution

**{32}** The New Mexico Constitution states that "[n]o person shall be required to attend any place of worship or support any religious sect or denomination." N.M. Const. art. II, § 11. As a preliminary matter, Elane Photography contends that the state constitution provides broader protection than the federal constitution and, therefore, this Court should not use federal standards to analyze the state constitutional claim. Elane Photography asks this Court to interpret Article II, Section 11 of the New Mexico constitution as a *per se* ban on compelled physical presence at any place of worship. It asserts that the New Mexico constitution provides "'broader protection' . . . because of, among other things, 'distinct state characteristics.'" But if New Mexico has ever recognized such a broader interpretation,

12

Elane Photography has failed to cite any precedent in its brief to support this interpretation. *See Wilburn v. Stewart*, 110 N.M. 268, 272, 794 P.2d 1197, 1201 (1990) ("Issues raised in appellate briefs that are unsupported by cited authority will not be reviewed by [this Court] on appeal."). In addition, no interstitial analysis or approach has been identified to support a deviation from federal First Amendment precedent addressing this issue. *See State v. Gomez*, 1997-NMSC-006, ¶¶ 17-23, 122 N.M. 777, 932 P.2d 1 (setting out the requirements for preserving and establishing that New Mexico precedent construes a parallel or analogous constitutional provision to provide more protection than its federal counterpart). Finally, the proposed interpretation by Elane Photography is attenuated and contrary to this Court's precedent.

**{33}** Article II, Section 11 and the federal free exercise and establishment clauses speak to compulsory participation in religious worship or observance. *See Friedman v. Bd. of Cnty. Comm'rs of Bernalillo Cnty.*, 781 F.2d 777, 792 & n.6 (10th Cir. 1985) ("[T]he goals of N.M. Const. art. II, [Section] 11 are the same as those served by the [e]stablishment and [f]ree [e]xercise [c]lauses of the First Amendment."). As such, "[t]he New Mexico courts have discussed the First Amendment and N.M. Const. art. II, [Section] 11 together and have cited federal case law under the First Amendment to support their findings under both the federal and state constitutional provisions." *Friedman*, 781 F.2d at 792; *see also State v. Vogenthaler*, 89 N.M. 150, 151-52, 548 P.2d 112, 113-14 (Ct. App. 1976) (discussing the statute prohibiting church desecration). As this Court and the Tenth Circuit have both treated Article II, Section 11 as coextensive with its federal counterpart, we will continue to use federal standards to analyze Elane Photography's free exercise of religion claim.

## 2.     The General Applicability of the NMHRA

**{34}** A state implicates the free exercise clause when it places burdens upon religious practitioners because of their affiliation or beliefs. But "the right of free exercise does not relieve an individual of the obligation to comply with a valid and neutral law of general applicability on the ground that the law proscribes (or prescribes) conduct that his religion prescribes (or proscribes)." *Emp't Div., Dep't of Human Res. of Oregon v. Smith*, 494 U.S. 872, 879 (1990), *superseded on other grounds by statute in*, Religious Freedom Restoration Act of 1993 (RFRA), P.L. 103-141, 107 Stat. 1488 (codified at 5 U.S.C. § 504; 42 U.S.C. §§ 1988, 2000bb, 2000bb-1 to -4) (internal quotation marks and  citation and omitted).

**{35}** The principle of neutrality and general applicability relied upon in *Smith* was recently reconfirmed in *Hosanna-Tabor Evangelical Lutheran Church and School v. E.E.O.C.*, __ U.S. __, __, 132 S. Ct. 694, 706-07 (2012). Elane Photography concedes that the NMHRA is a neutral statute, but argues that the district court "improperly conflated the concepts of neutrality and general applicability, and thus did not separately analyze the general[]applicability requirement." As such, Elane Photography argues that we must apply a strict scrutiny analysis to its claim. *See Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 531-32 (1993) (reasoning that strict scrutiny applies to a free exercise claim where the relevant statute is either not generally applicable or not neutral). However,

13

"a law that burdens religious practice need not be justified by a compelling governmental interest if it is neutral and of general applicability." *Id.* at 521.

**{36}** Elane Photography claims that the NMHRA is not a statute of general applicability because it contains "secular and religious categorical exemptions that undermine the statute's general purpose." We disagree. A statute is generally applicable when it does not impose burdens on select groups. *See Cohen v. Cowles Media Co.*, 501 U.S. 663, 670 (1991) (reasoning that a statute is generally applicable if its application does not target or single out a group, but is generally applicable to the daily transactions of all citizens). Elane Photography points to the analysis in *Lukumi* to assert that NMHRA is not a law of general applicability. In *Lukumi*, the United States Supreme Court's analysis was limited. 508 U.S. at 542-43. The Court determined that "we need not define with precision the standard used to evaluate whether a prohibition is of general application." *Id.* at 543. This limited analysis occurred because the ordinances in question were so far below the minimum standards of general applicability and the record disclosed that it was "the object of the ordinances to target animal sacrifices by Santeria worshippers because of its religious motivation." *Id.* at 542. In *Lukumi*, the ordinances were "not neutral" because "[d]espite the city's proffered interest in preventing cruelty to animals, the ordinances [were] drafted with care to forbid few killings but those occasioned by religious sacrifice." *Id.* at 542-43. As a result, the city had selectively imposed "burdens only on conduct motivated by religious belief" protected by the free exercise clause of First Amendment jurisprudence. *Id.* at 543.

**{37}** Unlike *Lukumi*, the case at bar is generally applicable and neutral; it does not selectively burden any religion or religious belief. The NMHRA applies generally to all citizens transacting commerce and business through public accommodations that deal with the public at large, and any burden on religion or some religious beliefs is incidental and uniformly applied to all citizens. *See Christian Legal Soc'y*, ___ U.S. at ___ n.27, 130 S.Ct. at 2995 n.27 (explaining that "the [f]ree [e]xercise [c]lause does not inhibit enforcement of otherwise valid regulations of general application that incidentally burden religious conduct"); *see also Branzburg v. Hayes*, 408 U.S. 665, 682 (1972) (holding "the First Amendment does not invalidate every incidental burdening . . . that may result from the enforcement of civil or criminal statutes of general applicability"). The NMHRA is not directed at religion or particular religious practices, but it is directed at persons engaged in commerce in New Mexico. Therefore, the NMHRA is a law of general applicability. As such, the government need not have a compelling interest to justify the burden it places on individuals who fall under its proscriptions. Because a rational basis exists to support the governmental interest in protecting specific classes of citizens from discrimination in public accommodations, the NMHRA does not violate the free exercise clause protections under the First Amendment.

### 3.     Strict Scrutiny Based Upon a Hybrid-Rights Theory

**{38}** Elane Photography also argues that strict scrutiny should be applied because it has asserted a hybrid-rights claim. *See Wisconsin v. Yoder*, 406 U.S. 205, 233 (1972)

14

(recognizing that a heightened scrutiny exception may be appropriate where a free exercise claim has been coupled with some other constitutional claim). The Tenth Circuit has noted that in order to apply the hybrid-rights theory, the claim "at least requires a colorable showing of infringement of a companion constitutional right." *Axson-Flynn v. Johnson*, 356 F.3d 1277, 1295 (10th Cir. 2004) (internal quotation marks and citation omitted). "Colorability" for the purposes of the hybrid-rights exception requires a plaintiff to establish a "fair probability, or a likelihood, of success on the companion claim." *Id.* (internal quotation marks omitted). This middle ground approach was adopted by the Tenth Circuit because "the hybrid-rights theory has been roundly criticized from every quarter." *Id.* at 1296. Other federal circuits have either refused to recognize the hybrid-rights analysis in *Smith* as dicta, or refused to apply the doctrine. *See Axson-Flynn* 356 F.3d at 1296 n.18; *McTernan v. City of York*, 564 F.3d 636, 647 n.5 (3rd Cir. 2009); *Jacobs v. Clark Cnty. Sch. Dist.*, 526 F.3d 419, 440 n.45 (9th Cir. 2008); *Knight v. Conn. Dep't of Pub. Health*, 275 F.3d 156, 167 (2nd Cir. 2001); *Warner v. City of Boca Raton*, 64 F. Supp. 2d 1272, 1288 n.12 (S.D. Fla. 1999); *Littlefield v. Forney Indep. Sch. Dist.*, 108 F. Supp.2d 681, 704 (N.D. Tex. 2000); *see also Lukumi*, 508 U.S. at 566-71 (Souter, J., concurring) (expressing in a concurring opinion doubts about any application of the hybrid-rights theory because *Smith* does not fit with settled law and the Supreme Court's application of the rational basis review applied to neutral laws). This Court has discussed the hybrid-rights theory in one prior case but determined that the theory was not applicable to the plaintiff's claims. *See Health Servs. Div., Health and Env't Dep't v. Temple Baptist Church*, 112 N.M. 262, 267-68, 814 P.2d 130, 135-36 (Ct. App. 1991).

**{39}**    Elane Photography asserts that it has presented a valid hybrid-rights claim based upon its free exercise claim that was combined with a freedom of expression claim and also a compelled-speech claim. It also asserts that either the freedom of expression claim or the compelled-speech claim had a fair probability or likelihood of success on the merits and, therefore, was colorable. Based upon its review of the facts and legal issues presented by Elane Photography, including its doubts about the hybrid-rights theory generally, the district court found that the hybrid-rights theory was not established in this case. Without making any determination that this Court has or should recognize a hybrid-rights theory as discussed in *Health Services*, we will proceed to review Elane Photography's claims based upon the "colorability" standard recognized by the Tenth Circuit.

**{40}**    Although the district court did not address the issue of "colorability" in any detail, we agree with its finding that Elane Photography failed to establish a claim based upon the hybrid-rights theory. We have already reviewed both of Elane Photography's freedom of expression and compelled-speech claims above. We agreed with the district court that both claims were not viable on the merits and that summary judgment in favor of Willock was proper in both instances. Because of our previous analysis of the freedom of expression and compelled-speech claims, we determine that there was not a fair probability, or a likelihood, of success on these companion claims. As a result, Elane Photography is not entitled to a heightened scrutiny analysis for its free exercise claim based upon an application of the hybrid-rights theory.

15

**{41}** Moreover, even if a compelling state interest were required, we agree with the district court that the burden on freedom of religion experienced by Elane Photography is unclear. "Congress and the courts have been sensitive to the needs flowing from the [f]ree [e]xercise [c]lause, but every person cannot be shielded from all the burdens incident to exercising every aspect of the right to practice religious beliefs." *United States v. Lee*, 455 U.S. 252, 261 (1982). Elane Photography was created as a limited liability company and was organized to do business in New Mexico. Elane Photography voluntarily entered public commerce and, by doing so, became subject to generally applicable regulations such as the NMHRC. "When followers of a particular sect enter into commercial activity as a matter of choice, the limits they accept on their own conduct as a matter of conscience and faith are not to be superimposed on the statutory schemes [that] are binding on others in that activity." *Lee*, 455 U.S. at 253. The owners of Elane Photography must accept the reasonable regulations and restrictions imposed upon the conduct of their commercial enterprise despite their personal religious beliefs that may conflict with these governmental interests.

**{42}** Elane Photography argues that application of the NMHRA "effectively den[ies] Elane Photography and its owners the civil privilege of lawfully operating their photography business simply because of their religious beliefs." Elane Photography argues that the district court's analysis and application of *Swanner v. Anchorage Equal Rights Comm'n*, 874 P.2d 274 (Alaska 1994) is improper in this case. *Swanner* similarly balanced sincerely held religious beliefs with the state's interest in battling discrimination. *Id.* at 283. Due to his religious beliefs, a landlord would not rent to unmarried couples or roommates of the opposite sex. *Id.* at 277. Similar to Elane Photography, the landlord claimed he was discriminating based on conduct, and claimed that compliance with Alaska's laws forced him to choose between his religious beliefs and his livelihood. *Id.* at 278-79. The *Swanner* court rejected landlord's claims, stating "[the landlord] has made no showing of a religious belief which requires that he engage in the property-rental business," and explained that "[v]oluntary commercial activity does not receive the same status accorded to directly religious activity." *Id.* at 283.

**{43}** Elane Photography claims Alaska's *Swanner* analysis is inapplicable because the New Mexico constitution provides that "no person shall ever be molested or denied any civil or political right or privilege on account of his religious opinion." N.M. Const. art II. § 11. Applying the NMHRA, however, only mandates that Elane Photography not use its personal religious beliefs to circumvent laws of general applicability that proscribe discrimination in commerce. This does not deny Elane Photography the right to express its religious opinion. The owners are free to express their religious beliefs and tell Willock or anyone else what they think about same-sex relationships and same-sex ceremonies. However, like the landlord in *Swanner* and the owners of all other public accommodations, Elane Photography may not discriminate in its commercial activities against protected classes as the basis for expressing its religious opinion.

**D. NEW MEXICO RELIGIOUS FREEDOM RESTORATION ACT**

**{44}** The New Mexico Religious Freedom Restoration Act (NMRFRA) prohibits a government agency from restricting a person's free exercise of religion unless the restriction is generally applicable, does not discriminate against religion, and the application of the restriction is essential to, and the least restrictive means of, furthering a compelling government interest. Sections 28-22-1 to -5. Again, on summary judgment, we review this question of statutory law de novo. *Self*, 1998-NMSC-046, ¶ 6.

**{45}** Elane Photography claims that the NMRFRA is applicable to the case at bar and is not limited to suits involving government agencies. Willock responds that the NMRFRA can only be applied to suits involving government agencies as adverse parties because the only relief allowed is for (1) injunctive or declaratory relief against a government agency, and (2) damages pursuant to the Tort Claims Act (NMSA 1978, §§ 41-4-1 to 41-4-27) (1976, as amended through 2009). *See* § 28-22-4(A)(1) & (2). A "governmental agency" is also a defined term that "means the state or any of its political subdivisions, institutions, departments, agencies, commissions, committees, boards, councils, bureaus or authorities." Section 28-22-2(B).

**{46}** The text of the NMRFRA is clear in limiting its scope to cases in which a "government agency" has restricted a person's free exercise of religion. Section 28-22-3. Elane Photography claims that the language of the statute authorizing a litigant to "assert [a NMRFRA] violation as a claim or defense in a judicial proceeding" allows cases between private parties. Section 28-22-4(A). Elane Photography takes this language out of context. In context, parties may raise NMRFRA violations as a claim or defense to "obtain appropriate relief against a government agency[.]" *Id.* Willock is not included in the definition of a "government agency" under the NMRFRA, and this statute was not meant to apply in suits between private litigants. *See* § 28-22-2(B); *see also Tomic v. Catholic Diocese of Peoria*, 442 F.3d 1036, 1042 (7th cir. 2006) (looking at the provision of the federal Religious Freedom Restoration Act (USRFRA) prohibiting "government" from burdening free exercise of religion to hold that the USRFRA is applicable only to suits in which the government is a party) *abrogated on other grounds by Hoshana-Tabor, __U.S. __*, 132 S.Ct. 694; *Rweyemamu v. Cote*, 520 F.3d 198, 204 n.2 (2nd Cir. 2008) ("[W]e do not understand how [USRFRA] can apply to a suit between private parties, regardless of whether the government is capable of enforcing the statute at issue.").

**{47}** However, in *Hankins v. Lyght*, the Second Circuit held that the USRFRA did apply to a suit between two private parties, but admitted that it could not find a single court holding that supported its novel application of the USRFRA. 441 F.3d 96, 103-04 (2d Cir. 2006); *see id.* at 115 (Sotomayor, J., dissenting) (reasoning that "[t]he plain language of the statute, its legislative history, and its interpretation by courts over the past twelve years demonstrate that the [USRFRA] does not apply to suits between private parties"). Notably, this Court has not been provided with any post-*Hankins* authority that has followed the Second Circuit's novel application of the USRFRA in cases between private litigants. Based upon the express language of the NMRFRA, we also decline to follow the holding in *Hankins*, and conclude that the NMRFRA is applicable only in cases that involve a government agency

17

as an adverse party in the litigation. *See Johnson*, 1999-NMSC-021, ¶ 27 (stating that this Court "will not read into a statute . . . language which is not there, particularly if it makes sense as written." (internal quotation marks and citation omitted)); *N.M. Mining Ass'n v. N.M. Water Quality Control Comm'n*, 2007-NMCA-010, ¶ 12, 141 N.M. 41, 150 P.3d 991 ("We ascertain the intent of the [L]egislature by reading all the provisions of a statute together, along with other statutes in pari materia."). The statutory language clearly bars application of the NMRFRA to litigation between the private parties in this case. As such, the NMRFRA is inapplicable as a matter of law.

## III.    CONCLUSION

{48}    We hold that Elane Photography's refusal to photograph Willock's commitment ceremony violated the NMHRA. In enforcing the NMHRA, the NMHRC and the district court did not violate Elane Photography's constitutional and statutory rights based upon freedom of speech, freedom of expression, freedom of religion, and the NMRFRA. We affirm the district court's denial of Elane Photography's motion for summary judgment and its decision to grant Willock's motion for summary judgment.

{49}    **IT IS SO ORDERED.**

_____

**TIMOTHY L. GARCIA, Judge**

**I CONCUR:**

_____

**CYNTHIA A. FRY, Judge**

**WECHSLER , Judge (specially concurring)**

**WECHSLER, Judge (specially concurring).**

{50}    I concur in the majority opinion. I write separately to address Article II, Section 11 of the New Mexico Constitution, which reads, in its entirety,

> Every man shall be free to worship God according to the dictates of his own conscience, and no person shall ever be molested or denied any civil or political right or privilege on account of his religious opinion or mode of religious worship. No person shall be required to attend any place of worship or support any religious sect or denomination; nor shall any preference be given by law to any religious denomination or mode of worship.

Its federal counterpart, the First Amendment, provides, in pertinent part, that "Congress shall make no law . . . prohibiting the free exercise" of religion.

18

**{51}**     Elane Photography argues that the New Mexico constitutional provision provides broader protection than the First Amendment, and, therefore, the NMHRA infringes on Elaine's religious freedom under the New Mexico Constitution, even if it does not infringe on her rights under the First Amendment.   The majority opinion analyzes Elane Photography's free exercise of religion claim under federal standards.

**{52}**     I agree with Elane Photography that the New Mexico Constitution may provide broader protection than the First Amendment.  Elane Photography specifically points to the language of the second sentence of Article II, Section 11 that it argues "prohibits the government from requiring a person to attend a place of worship" as being "distinctive" from the First Amendment.  It contends that "Elaine would have been forced to 'attend' [a religious] ceremony to photograph it."  While I agree that the language of Article II, Section 11 is different from that of the First Amendment, I do not agree with Elane Photography that there was an infringement of Article II, Section 11 rights based on this language.  The nub of Elaine's religious freedom argument is not that she was compelled to attend a place of worship or even a religious ceremony.  Nothing in the facts indicates that when Elane Photography declined the job Elaine knew that there was any religious aspect to the ceremony she was asked to attend.

**{53}**     Rather, the language of Article II, Section 11 that to me captures Elane Photography's religious freedom position is the first sentence, stating that "[e]very man shall be free to worship God according to the dictates of his own conscience" and prohibiting the denial of any "privilege on account of his religious opinion."  This language, which focuses on a person's freedom to act in accordance with one's conscience concerning one's religious opinion or worship, seems broader than the First Amendment language that focuses on preventing federal laws that "prohibit" a person's free exercise of religion.  *See Humphrey v. Lane*, 728 N.E.2d 1039, 1044 (Ohio 2000) (holding that the Ohio constitution provides broader religious protection than the federal free exercise clause based on language stating that "nor shall any interference with the rights of conscience be permitted").  Since *Smith*, the majority of state appellate courts that have interpreted their state constitutions concerning the issue have concluded that their state constitution provides broader protection than the First Amendment.  *See* W. Cole Durham & Robert Smith, 1 Religious Organizations and the Law § 2:63 (2012 Thompson Reuters) (stating that post-*Smith* "a total of 11 states . . . have interpreted their state constitutions' free exercise clauses to require strict scrutiny analysis" and "[o]nly three courts . . . have explicitly accepted *Smith* as the proper standard for reviewing free exercise questions under their state constitutions").  Several of these states have constitutional provisions containing language similar to the New Mexico Constitution.  *See, e.g.*, *State ex rel. Cooper v. French*, 460 N.W.2d 2, 9 (Minn. 1990) (holding that state constitutional language stating that "nor shall any control of or interference with the rights of conscience be permitted . . . grants far more protection of religious freedom" than the federal free exercise clause); *First Covenant Church of Seattle v. City of Seattle*, 840 P.2d 174, 186-87 (Wash. 1992) (en banc) (holding that the state must justify even a "facially neutral, even-handedly enforced" statute with a compelling state interest if the statute

indirectly burdens the exercise of religion based on a state constitutional provision providing that "[a]bsolute freedom of conscience in all matters of religious sentiment, belief[] and worship, shall be guaranteed to every individual, and no one shall be molested or disturbed in person or property on account of religion" (internal quotation marks and citation omitted)).

{54}    However, this Court can only review issues that have been properly preserved for review below.  Rule 12-216(A) NMRA.  Our Supreme Court has adopted the interstitial approach to preserve an argument that the New Mexico Constitution provides greater protection than its federal counterpart. *Gomez*, 1997-NMSC-006, ¶ 21.  As stated by our Supreme Court, this approach provides that

> [w]here a state constitutional provision has previously been interpreted more expansively than its federal counterpart, trial counsel must develop the necessary factual base and raise the applicable constitutional provision in trial court.  Where the provision has never before been addressed under our interstitial analysis, trial counsel additionally must argue that the state constitutional provision should provide greater protection, and suggest reasons as to why, for example, a flawed federal analysis, structural differences between state and federal government, or distinctive state characteristics.

*State v. Leyva*, 2011-NMSC-009, ¶ 49, 149 N.M. 435, 250 P.3d 861 (emphasis, internal quotation marks, and citation omitted).

{55}    Interpreting Article II, Section 11 differently from the First Amendment is an issue of first impression.  Thus, Elane Photography argued to the district court that the New Mexico constitutional language was broader than the First Amendment.  However, it did so only with respect to the language of the second sentence of Article II, Section 11 relating to attendance of a place of worship.  It did not argue that the first sentence provided broader protection, and thus it did not invoke a ruling from the district court that the language of the first sentence provides broader protection than the First Amendment.  It therefore did not preserve under Rule 12-216(A) an argument based on the language of the first sentence of Article II, Section 11 that the NMHRA infringed upon Elaine's freedom "to worship God according to the dictates of [her] own conscience."  Although the language of Article II, Section 11 is different from that of the First Amendment and may provide broader protection, determination of its scope remains for another day.

_____

**JAMES J. WECHSLER, Judge**

**Topic Index for *Elane Photography, LLC v. Willock*, Docket No. 30,203**

**APPEAL AND ERROR**

Preservation of Issues for Appeal

**CONSTITUTIONAL LAW**
Freedom of Religion
Freedom of Speech
New Mexico Constitution, General

**CIVIL RIGHTS**
Human Rights Act
Sex Discrimination